VAN FLEET, INC., APPELLANT, *v.* THE BAYER MEDICINE CO., APPELLEE.

(Decided February 6, 1939.)

*Messrs. Wilson & Rector, Messrs. Welles, Kelsey, Cobourn & Harrington* and *Mr. Francis Rogers,* for appellant.
*Messrs. Martin & Martin,* for appellee.

LLOYD, J. On April 24, 1938, the appellant, Van Fleet, Inc., as plaintiff, filed its petition in the Court

of Common Pleas alleging therein that it is and for many years has been the owner of a valuable trade name, to wit: "The Bayer Medicine Company," and of certain formulæ for the manufacture of certain proprietary medicines and remedies which have been appropriated and are being manufactured and sold by appellee under the said trade name, and praying for an injunction to enjoin appellee from using such trade name and formulæ and from manufacturing and selling or offering for sale said proprietary medicines and remedies, and that appellee be required to deliver to appellant the book in which the formulæ are recorded, which it is alleged is in the possession of and wrongfully retained by appellee.

In its answer, appellee admits that it and appellant are corporations, but denies that appellant was a corporation on April 8, 1938, when appellee was incorporated, and admits that it is in the possession of certain formulæ and that unless enjoined from so doing will manufacture for sale, sell and offer for sale commodities according to such or similar formulæ under such trade name.

It denies appellant's ownership of the trade name and formulæ and alleges that on February 12, 1937, appellant sold and delivered to George F. McIntyre the assets and property described in appellant's petition, which for a valuable consideration were sold by him to the appellee, The Bayer Medicine Company, and that for approximately five years prior to the filing of appellant's petition its corporate franchise had been revoked for non-payment of certain franchise taxes and that its business was neither continuous nor profitable and that at the time of filing its petition and for a long time theretofore appellant had no business of any kind.

The answer further alleged that on or about March 23, 1937, with full knowledge of the sale of its assets to McIntyre and while its charter was revoked, appel-

lant, at the request of and for the benefit of The Bayer Company, Inc., of New York, engaged in a kindred but competing business, caused the control of appellant to be vested in Harrison J. Smith and its attorney David Rasch, to whom, on that date, all of its shares of stock were transferred and re-issued for the sole benefit of The Bayer Company, Inc., of New York.

Denying all of the allegations of the petition not specifically admitted to be true, appellee says that the petition of appellant was not filed in good faith for its stockholders as such; "that its hands are unclean and that it has not done equity in relation to the matters of which it complains herein," and as a further and additional defense, pleads estoppel.

The foregoing is a skeletonized statement of the pleaded facts. The Court of Common Pleas found in favor of appellee, dismissed the petition of appellant and awarded appellee its costs. That court also dismissed a cross-petition filed by appellee. From the judgment dismissing its petition, the appellant appeals to this court on questions of law and fact. No appeal has been taken by appellee from the dismissal of its cross-petition.

To narrate the evidential facts in detail would require a too lengthy statement, of interest only to the parties, who are minutely informed of all the variant things said and done which culminated in this litigation. This the court will not attempt to do.

This much is clear—that, of the property the ownership of which is in controversy, the trade name of "Bayer" is the prize contended for and most desired. The trade name of "Bayer Medicine Company" was adopted and used as early as 1873 by a Mr. Burger, a Toledo druggist, and a Dr. Bayer, who were engaged as partners in the proprietary medicine business. Its ownership and the formulæ developed by them, together with the good will of their business, became the property of William B. Stoll, from whom it was ac-

quired in 1928 by Van Fleet, Inc., that company proceeding to manufacture and sell, in a more or less indifferent way, proprietary medicines pursuant to these formulæ, under the trade name of Bayer Medicine Company, which name had been copyrighted.

The original stockholders of the appellant company were Dr. W. R. Hill, 30 shares; D. L. Van Fleet, 27 shares; Moses Lane, 12 shares, and Don Netz, 1 share —70 shares in all. The Netz share was later assigned and transferred to H. M. Jay. The business of the company was not profitable and its charter was cancelled by the state in 1932 for non-payment of franchise taxes, but during this time its president, Van Fleet, who was a druggist, continued sporadically in the attempt to manufacture and market The Bayer Medicine Company products. On April 23, 1929, Van Fleet and Hill executed a written agreement wherein it is stated that Van Fleet "has this day * * * purchased for a nominal consideration, the interest said second party [Hill] had" in Van Fleet, Inc., and that said second party, having expended various sums of money in the promotion of the corporation, Van Fleet, for a valuable consideration, agreed to supply Hill with such quantity of merchandise, particularly Vap, as he required in the practice of his profession to the extent of $1,400, or to pay such sum out of the profits of the corporation, and in addition thereto Van Fleet was to and did give Hill his note for $600, which note Hill still holds. Other than his effort to sell one of the products called Vap, particularly mentioned in the foregoing agreement, Hill "had nothing to do with the prosecution of the business" of the corporation after the date of the agreement. It is said that this contract was never consummated and that the Hill stock was never actually delivered and transferred. But be that as it may, it was never revoked or cancelled, nor was there any objection by Hill or overt claim made by him that it was conditional, until the

occurrence of the happenings that led to the instant litigation.

From that time up to March, 1937, no one but Van Fleet seems to have had anything to do with the corporate business, and no one communicated with or complained of his conduct and control thereof, nor were there any meetings of stockholders or directors or any records kept of any corporate action or business.

Hill testified that with the exception of his personal attempt to sell Vap, an antiseptic powder, as provided in his agreement with Van Fleet, he had nothing to do with the transaction of the business of the corporation and he was not otherwise interested or active in the affairs of the company until the latter part of March, 1937, when a Mr. Rasch, an attorney representing The Bayer Company, Inc., of New York, makers of Bayer's Aspirin, called on him in Toledo for the purpose of acquiring for his client the Van Fleet, Inc., stock. Rasch introduced himself as a traveling attorney and said that he was representing an old man who had been acquainted with Dr. Bayer or Mr. Burger and who had a wayward son for whom he was desirous of obtaining The Bayer Medicine Company in an effort to bring him back on the road to success "and that the old man had come into some inheritance of a limited sum of money with which he could pay just so much for the company." This approach, although condoned in a court of law and perhaps unimportant, is not altogether attractive to a court of equity whose conscience is invoked to right a claimed wrong.

As stated in the brief of appellant: "Mr. Rasch came to Toledo and met Hill for the purpose of purchasing his stock in Van Fleet, Inc. Hill indicated a readiness to sell, but referred Mr. Rasch to Mr. Lane, an attorney of Bowling Green, Ohio, who held 12 shares. Thereupon Mr. Rasch saw Mr. Lane and engaged him to assist in the acquisition of all of the stock of Van Fleet, Inc. Lane thereupon saw Van

Fleet. Van Fleet was willing to sell but informed Lane that a short time previous to Lane's call upon him he had transferred the property of the Van Fleet, Inc., to a man named McIntyre, living in Maumee, Ohio,'' from whom he had received $500 in money and notes aggregating $200 payable to his order. Thereupon Van Fleet agreed in writing to sell his stock and whatever interest he had in the company, upon the condition that Lane could induce McIntyre to cancel his contract with Van Fleet. Without complying with this condition, Lane delivered these contracts to Rasch and then called upon McIntyre, who having then associated others with him and having expended quite a sum of money preparing to carry on the prospective business of his incorporated The Bayer Medicine Company, declined to cancel his contract and surrender the assets acquired thereby. This contract was entered into on February 12, 1937, and recites that:

"I, Doyt L. Van Fleet, president of Van Fleet, Inc., a corporation, duly organized under the laws of the state of Ohio, having been duly authorized by the board of directors and shareholders of Van Fleet, Inc., to sell the assets of said corporation, do hereby on behalf of said Van Fleet, Inc., its directors and shareholders, agree to sell said assets to G. F. McIntyre for the sum of $700.''

Then follows an enumeration of the property conveyed, wherein is included the trade-mark, the copyright thereof, the formulæ, good will, etc., of the corporation. It is signed "Doyt L. Van Fleet." Then follows an affidavit signed by Van Fleet that he is the president of the company and is authorized by the directors and stockholders to execute the agreement on their behalf and on behalf of the corporation.

It is doubtful whether any stock of the company was issued to Lane prior to his negotiations with Rasch, and the facts evidence Van Fleet's control and owner-

ship of his 27 shares as well as the right to have transferred to him the Hill 30 shares. Rasch knew all of the foregoing facts before he concluded his negotiations for the stock and assets of the Van Fleet corporation, knew that its charter had been cancelled and that Van Fleet, with the tacit consent of Hill and Lane, had individually carried on such of its business as there had been, that it had not been profitable and that they had given no attention to it since the last meeting of the directors held on January 23, 1929. There is no doubt of the good faith of McIntyre, nor, the court finds, of Van Fleet.

Rasch was determined to execute his mission in whatever way seemed expedient, and Lane, according to Van Fleet, told him that Rasch had refused to surrender the contracts he had obtained, and having them in his possession "he was willing to take a chance on it," and this is confirmed by affidavits to the same effect made by Rasch at the request of Lane and Hill.

To get the real story, requires a reading of all of the evidence, to detail which understandingly would require, as heretofore suggested, a long and prolix statement.

Appellant's contention is that, regardless of all the other facts and circumstances, the corporation being a distinct and separate entity from its individual directors and stockholders, Van Fleet was without power to dispose of the corporation property to McIntyre without express authority of its directors and stockholders, and McIntyre therefore could not in any event or under any circumstances acquire title thereto. But in the instant case there was to all intents and purposes a surrender to Van Fleet of the use and control by him of its property and assets as evidenced not only by their assent thereto with knowledge thereof, but by the fact that he had not only actually held his own stock but had acquired also that of Hill.

Equity has a way of looking through form to sub-

stance; and exercising this prerogative in the instant case, it is affirmatively apparent. that, if Rasch has acquired all of the stock of appellant as it is claimed, then he holds it not for himself but for The Bayer Company, Inc., of New York, and that so far as concerns the instant case, appellant, Rasch, and The Bayer Company, Inc., of New York, are one in interest and knew before the attempted purchase of the Van Fleet, Inc., stock, all about the condition of the company, and of the manner in which such business as it had was conducted, and that Van Fleet had the recognized supervision and control thereof, and of its property, and in the name of the company had sold its assets to McIntyre.

The right to invoke the extraordinary remedy of injunction is not an arbitrary and vested right. Its allowance is rather a matter of grace and good conscience. A court of equity has a large discretion in granting and refusing the writ in a particular case, and this court is of the opinion that in the instant case the prayer for injunction should be refused and the petition of appellant dismissed.

*Decree accordingly.*

CARPENTER and OVERMYER, JJ., concur.