MANCHESTER ET AL., APPELLANTS, *v.* THE CLEVELAND TRUST CO., APPELLEE.

(No. 22763—Decided July 27, 1953.)

*Messrs. VanAken, Whiting, Arnold & Nash,* for appellants.

*Messrs. Baker, Hostetler & Patterson* and *Mr. Richard F. Stevens,* for appellee.

CONN, J. This is an appeal on questions of law from a judgment of the Common Pleas Court, dismissing plaintiffs' third amended petition, as amended, on motion of defendant. Defendant's motion was made at the close of plaintiffs' evidence and submitted on the ground "that the proof adduced is insufficient to support the claim for relief asserted by them [plaintiffs] against the defendant and is insufficient as a matter of law."

On application of plaintiffs, a temporary restraining order against defendant was issued by the trial court. Thereafter, the case came on for a protracted trial upon the issues raised upon the third amended petition of plaintiffs, as amended, the answer of defendant and plaintiffs' reply thereto.

The pleadings disclose that plaintiffs, Ida Austin Manchester, Lillian Austin Ferguson, Florence Austin Shimmon (now deceased) and Ethel Austin Whiting, are daughters of Samuel and Sarah J. Austin, and comprise all the life beneficiaries of the Samuel and Sarah J. Austin trusts; that the remaining plaintiffs are the children and grandchildren of such life beneficiaries; that the trusts were established by separate trust agreements entered into on December 22, 1930, with the defendant The Cleveland Trust Company as trustee; that such trust agreements were subsequently modified and amended in certain particulars; that the corpora of the trusts have been and are now substantially made up of the capital stock of The Austin Company, an Ohio corporation founded by Samuel Austin and engaged in the building construction industry; that since the death of Sarah J. Austin in 1933, and the death of Samuel Austin in 1936, all the outstanding stock of The Austin Company has been held by the defendant, as trustee, the W. J. Austin family, George A. Bryant, an officer and director of the company and his wife, and other officers, directors and employees of

The Austin Company; that the stock held by the trustee is substantial but represents a minority interest in The Austin Company; that the common shares are and always have been the only shares with voting rights; that the defendant named has been continuously the trustee under such trusts; that Wilbert J. Austin was an associate of his father Samuel Austin, and served as an officer and director, and as president from 1924 until his death in 1940; that the holdings of Wilbert J. Austin and his wife, at and prior to the death of his parents, were more than twice that of his parents in The Austin Company; that the value of the common stock has increased since the death of Samuel Austin; that following the death of Wilbert J. Austin his proportionate share of the trust property was distributed to his children; and that said children and widow of decedent are large stockholders in The Austin Company.

It appears further from the pleadings that George A. Bryant is and has been a director of The Austin Company since 1930 and president since 1940, and has become the largest stockholder of the company; that The Austin Company has been a large depositor in The Cleveland Trust Company for many years and the trust company, for a considerable time, has extended The Austin Company a line of credit in the amount of $1,000,000; that George A. Bryant owns 150 shares of stock in The Cleveland Trust Company and was elected to its board of directors on September 4, 1947, and is now serving thereon; that George A. Bryant, on behalf of The Austin Company, sought to obtain from the trustee in 1947 an option to purchase the common stock of The Austin Company; that the trustee refused to grant such option; and that subsequently George A. Bryant, on behalf of The Austin Company, entered into negotiations with the defendant to buy the common stock of The Austin Company held in

trust. It appears further that in August 1937 the trustee considered selling 1,000 shares of the common stock held in trust for $125 per share to provide funds for inheritance and estate taxes and later sold 400 shares to The Austin Company at the price of $100 per share; that in the year 1940 Allan S. Austin, son of W. J. Austin, then president and director of The Austin Company, sought to exchange preferred stock of The Austin Company for common stock held in trust; and that the trustee considered such exchange on a basis of three shares of common stock for four shares of preferred stock, but that no offer was ever received by the trustee and no action taken.

Plaintiffs aver that the trustee has been negligent in the performance of its duties and charges the trustee with mismanagement of the trusts by reason of which plaintiffs have sustained substantial losses and will be subjected to further losses in the future.

At the center of these charges is the claim that the interests of the trustee are in conflict with its paramount duty to observe at all times an undivided loyalty to the life beneficiaries in the management of the trust property and in the promotion of the best interests of the plaintiffs in and to the trust estate. We shall briefly point out the more material averments upon which the alleged conflict of interest and charges of disloyalty are predicated. These charges are expressly denied by the trustee.

Among other things, plaintiffs allege that they had no knowledge of the real value of the 1,000 shares of common stock which the trustee offered to sell Wilbert J. Austin in August 1937 at the price of $125 per share, and did in fact sell 400 shares of the common stock at the lower price of $100 per share; that plaintiffs were uninformed respecting the value of the common and preferred stock in the contemplated exchange in 1940 of preferred for the common stock held in trust;

and that the trustee did nothing to protect the corpus of the trust by reason of the action taken at a special meeting of the stockholders early in 1941 to increase the amount of authorized common stock and the sale of 3,082 shares thereof to the directors and a few executive officers of The Austin Company at the price of $100 per share, payable at the rate of 10 per cent cash and the balance from dividends.

Plaintiffs allege further that the interests of W. B. Stewart and George A. Bryant were in conflict with those of the trusts during all the time that proxies for voting the trust shares were regularly issued to them following the death of W. J. Austin in 1940 to the time of the death of William B. Stewart in 1947, all of which the trustee well knew or should have known; that upon the death of William B. Stewart, Herbert R. Whiting was named as his successor; that the trustee never attended a meeting of the stockholders of The Austin Company; that the trustee refused to assist in electing a representative of the trusts as a director of The Austin Company; that the trustee refused to permit the beneficiaries to examine its files and records or give them information concerning the affairs of The Austin Company which they were entitled to have, so as to enable them to exert their influence for the benefit of the trusts; that the conduct of the trustee has damaged and is causing damage to the trusts; and that the trustee has failed to protect the trust property.

In the second and third causes of action, plaintiffs allege that the trustee has been negligent in conducting the affairs of the trust and indifferent to the best interests and welfare of the beneficiaries and has failed to preserve the trust property, by reason of which the trust estate has been damaged.

In the fourth cause of action, plaintiffs aver that the welfare of the trusts requires the removal of the

trustee or the appointment of a committee or cotrustee, and that the beneficiaries since 1947 have lost confidence in the trustee. Plaintiffs set forth also certain terms of the trust agreements, including provisions in each as to distribution of the income and corpus of the trusts following the death of the settlors. It is alleged also that the officers and directors of The Austin Company are antagonistic and hostile to the interests of the trusts as stockholders of the company and that George A. Bryant over a period of years has been attempting to purchase the shares of common stock held by the trustee at a price below their true value in furtherance of a plan whereby all the stock of The Austin Company shall be held by men active in the business of the company.

Plaintiffs pray that the trustee be removed and a substitute trustee be appointed or that two beneficiaries be appointed as a committee or as cotrustees to serve with the present trustee or that such other arrangement be made as will free the trustee from the possible effects of the present trustee's attitude and relationship to The Austin Company; that the trustee be required to make an accounting; and that plaintiffs may have such other and further relief as they may be entitled to.

The answer of the trustee contains special and general denials, and, also, a number of affirmative averments. Issues were raised thereon by the reply of plaintiffs. The issues thus raised, in so far as they are material, are defensive in character and as to which the trustee would have the duty to go forward.

As already pointed out, the trial court entered judgment for the trustee on its motion at the close of plaintiffs' case. At the time the trustee's motion was granted, it had not rested its case and had not had the opportunity to introduce any evidence in its own behalf in support of its special denials and affirmative de-

fenses. Such defenses were without evidential support except where the record discloses that the evidence offered by plaintiffs and any inferences that arose or where evidence of probative value was developed on cross-examination of plaintiffs' witnesses and which tended to sustain such defenses.

Following the granting of the trustee's motion for judgment, plaintiffs duly filed their motion to vacate and set aside the judgment, and for a new trial, which was overruled.

Under the provisions of Section 11575, General Code, a new trial is defined as a "re-examination, in the same court, of the issues." The "issues" include both issues of fact and issues of law, and in determining these issues the trial court had the duty to consider the whole record, although the trustee had not presented its evidence and rested its case.

The trustee's motion for judgment was in effect a demurrer to the evidence, and the issue raised was the sufficiency of plaintiffs' evidence as a matter of law. It follows that if the evidence offered by plaintiffs in support of a material issue in the case was substantial and of a credible character and preponderated in plaintiffs' favor, the motion should not have been sustained. If it be determined that such was the state of the record, plaintiffs have made a prima facie case and the defendant would be required to go forward.

In other words, the quantum of proof required to support plaintiffs' prayer for equitable relief, when plaintiffs rested their case, need not necessarily have the same probative value as would be required to support a judgment at the close of all the evidence.

Plaintiffs assign numerous errors. Restated and abridged, the material errors assigned are substantially as follows:

1. That the trial court erred in dismissing plaintiffs' third amended petition, as amended, on the ground

that the evidence adduced by plaintiffs was insufficient to support plaintiffs' prayer for any relief, as a matter of law, and also erred in overruling plaintiffs' motion to vacate said judgment and grant a new trial.

2. That certain conclusions of fact are contrary to law and against the manifest weight of the evidence.

3. That certain conclusions of law are erroneous.

4. That the trial court erred in excluding exhibit No. 179.

5. That the trial court erred in dissolving the temporary restraining order and in finding that the temporary injunction ought not to have been granted is contrary to the evidence, not supported by the evidence and is against the weight of the evidence.

1. The issue raised on plaintiffs' first assignment of error is proximately related to the quantum of proof. If the evidence adduced by plaintiffs, together with all reasonable inferences arising thereon, tended to provide a basis for any relief cognizant in a court of equity and as prayed for by plaintiffs, the motion of the trustee for judgment should not have been granted.

It is pertinent also to note that the statute (Section 11421-3, General Code) expressly provides that:

"So far as in their nature applicable, the provisions of this chapter respecting trials by jury, apply to trials by the court."

From a procedural standpoint, it is apparent that a case tried to a jury is not comparable in every particular to a case tried to the court. However, in a case tried to the court, and where defendant moves for judgment at the close of plaintiff's case, *on the ground that the evidence adduced by plaintiff, as a matter of law, does not entitle him to any relief*, there is close analogy to a motion for a directed verdict in a jury trial.

The case of *Euclid Arcade Bldg. Co.* v. *H. A. Stahl Co.*, 99 Ohio St., 47, 121 N. E., 820, negatively charts

the procedural course which we believe should be taken here. That case originated in the Municipal Court and was tried to the court. At the close of plaintiff's case, on motion of defendant, the court found in its favor. The judgment of the trial court on error to the Common Pleas Court was reversed and this latter judgment was affirmed by the Court of Appeals. On appeal to the Supreme Court, the judgments of the Common Pleas Court and the Court of Appeals were reversed, and that of the Municipal Court affirmed. We quote from the opinion by the court, page 49, as follows:

"* * * Unquestionably, the defendant had the right *at the close of the plaintiff's evidence to rest its case and submit it upon the facts proven.* We see no reason why, at the close of plaintiff's case, if the evidence of the plaintiff preponderates in favor of the defendant, the case should proceed further, incurring useless expense and for an unavailing purpose unless the defendant were unfortunate enough to offer testimony that would bolster up his opponent's case.

"The trial of a law case to the court without the intervention of a jury is tantamount to the trial of a chancery case. If the plaintiff at the close of his case has offered no evidence upon a material fact required to be proved, or has offered evidence of such a character as to overwhelm *any prima facie case made by him,* common sense would require that at the instance of the defendant the litigation should be then terminated. * * *" (Emphasis ours.)

See, also, 39 Ohio Jurisprudence, 1193, Section 450; *Matthews* v. *State Mortgage & Inv. Co.,* 119 Ohio St., 419, 164 N. E., 418; *Bartel* v. *Brooks* (Ohio App.), 94 N. E. (2d), 640; 53 American Jurisprudence, 782, Section 1126.

As already pointed out, the charges made by plaintiffs against the trustee are centered in the claim that

the interests of the trustee conflict with the duties it owes to the beneficiaries. It is a cardinal rule that the welfare of the cestui que trust is the focal point of every consideration of duty and loyalty of the trustee. *In re Estate of Binder*, 137 Ohio St., 26, 47, 27 N. E. (2d), 939, 129 A. L. R., 130.

The evidence discloses instances of good faith and diligence on the part of the trustee in dealing with matters relating to the Austin trusts. However, the commendable conduct of the trustee in these respects is hardly sufficient to meet the inferences that arise on the record by reason of Mr. Bryant's official relationship to the trustee as an active and influential member of the board of directors of the defendant and his dominant position with The Austin Company. These relationships and Mr. Bryant's avowed purpose to acquire on behalf of his company all of the Austin stock in the trusts, the benefit that will accrue to him as the largest stockholder of The Austin Company on a reissue of the stock to its officers, directors and employes, his antagonism toward the life beneficiaries, his opposition to their representation on the board of directors of The Austin Company, all tend to give greater probative value to plaintiffs' evidence and the inferences that clearly arise.

The advantageous position of Mr. Bryant as a member of the directorate of defendant, together with his predominant and controlling position with The Austin Company, tends to create an environment of conflict and divided loyalty in which the trustee finds itself. It is an anomalous state of affairs and analogous to those situations, everywhere condemned, wherein the fiduciary undertakes to deal with himself.

The following statement in the opinion of the court in *In re Trusteeship of Stone*, 138 Ohio St., 293, 302, 303, 34 N. E. (2d), 755, 134 A. L. R., 1306, is appropriate here:

"Since a trustee is a fiduciary of the highest order and is charged with the utmost fidelity to his trust, he must refrain from creating situations where his own interests are brought into conflict with those of the trust, and from doing those things which would tend to interfere with the exercise of a wholly disinterested and independent judgment. In accepting a trust, the trustee is presumed to know the obligations and limitations connected with his high office and, if he transgresses, must abide the consequences."

See, also, 2 Restatement of the Law of Trusts, 432, Section 170, Comments *c* and *d*; 4 Pomeroy's Equity Jurisprudence (5 Ed.), 222, Section 1077; *Meinhard v. Salmon*, 249 N. Y., 458, 464, 164 N. E., 545, 62 A. L. R., 1; *In re Lewisohn*, 294 N. Y., 596, 63 N. E. (2d), 589; 2 Scott on Trusts, 856, Section 170.

It is easily inferred from the record that Mr. Bryant proposes to make the best deal he can for The Austin Company, in fact he owes a duty to do so. As against this situation, his membership and influence on the board of directors of the defendant provides a basis of conflict of interest of the trustee and a potential breach of loyalty of which a court of equity will take cognizance.

It should be noted further that the life beneficiaries are not estopped to complain or take appropriate action to protect their interests by reason of their earlier request that Mr. Bryant be appointed to vote the trust stock. The record discloses that the life beneficiaries had not had training in business or in corporate matters and that at the time they requested Mr. Bryant's appointment, they had no notice or knowledge of the studied purpose of Mr. Bryant to acquire the trust shares under circumstances probably violative of their interests, and there is no evidence that they should have anticipated such purpose and determination. Clearly, the remaindermen were in no way affected.

It is not practical or possible, due to limitation of time and energy, to analyze and comment on the abundant number of cases and authorities cited and relied on by counsel. We have examined many of them, and it appears that they uniformly require the trustee at all times to sustain an undivided loyalty towards the beneficiaries of the trust and that undivided loyalty of the trustee towards the cestui que trust is incompatible with a conflict of interest.

The trustee contends that there has been no showing that the alleged conflict of interest had been prejudicial to the beneficiaries and, further, that there is no proof that the trustee has been in any way disloyal in the administration of the trust estates. The trustee concedes, however, ''that a court of equity should primarily consider the welfare of the trusts and its beneficiaries when a conflict of interest has been established.''

As against the position taken by the trustee and ardently presented, which is defensive in character, the plaintiffs have shown by substantial evidence that there is a conflict of interest and upon this showing have made a prima facie case entitling the beneficiaries to some form of equitable relief at the conclusion of plaintiffs' case. With the foregoing brief analysis, a majority of the court concludes that plaintiffs' first assignment of error should be sustained.

2. On application of plaintiffs, conclusions of fact and law were made by the trial court under authority of Section 11421-2, General Code. Errors are assigned by plaintiffs to certain of these conclusions. The above section of the Code provides:

''When questions of fact are tried by the court, its findings may be general for the plaintiff or defendant, unless, with a view of excepting to the court's decision upon questions of law involved in the trial, one of the parties so requests, in which case, the court shall state

in writing the conclusions of fact found separately from the conclusions of law."

The express purpose of requiring the court to enter special findings is to provide a basis on which a party may except to the "court's decision upon questions of law involved in the trial." When a party is entitled to findings and the request is timely made, as it was in this case, a mandatory duty is imposed on the court. 39 American Jurisprudence, 1199, Section 454; *Shunk* v. *Shunk Mfg. Co.*, 86 Ohio App., 467, 93 N. E. (2d), 321.

The rule is well established that conclusions of fact found pursuant to the statute are limited to ultimate facts in issue. It follows that the mere recital or narration of the evidence is neither contemplated by the statute nor in accord with the rule. 39 Ohio Jurisprudence, 1205, Section 459; *Cleveland Produce Co.* v. *Dennert*, 104 Ohio St., 149, 135 N. E., 531; *Bauer* v. *Cleveland Ry. Co.*, 141 Ohio St., 197, 203, 47 N. E. (2d), 225.

The trial court entered 80 separate conclusions of fact, not including a number of subheadings, and 12 conclusions of law. A number of findings of fact are incorporated in the judgment entry, some of which are similar to those in the separate conclusions. Where the court states its conclusions of fact and law separately, we do not approve incorporating conclusions of fact thus stated in part or in entirety in the judgment entry.

Plaintiffs challenge certain conclusions of fact designated by the following numbers: 10, 11, 12, 13, 14, 19, 20, 22, 23, 25, 50, 51, 53, 54, 65, 70, 71, 73, 74, 75, 76, 77, 78, 79 and 80, and assign the above numbered conclusions as error on the grounds that each are not supported by the evidence or are against the manifest weight of the evidence or are ambiguous, indefinite and contrary to law.

It is not practical to discuss separately each of the conclusions that have been challenged. They have been individually considered in the light of the evidence, and we find that each conclusion is condemned on one or more of the following grounds, to wit, not a conclusion of ultimate fact in issue, not supported by the evidence, argumentative, immaterial, narrative, or mixed conclusion of fact and law. It is our opinion that plaintiffs' assignments of error as to the several conclusions of fact called in question are well taken and should be sustained.

3. Plaintiffs assign also as error certain conclusions of law entered by the trial court, as follows, Nos. 5, 6, 7, 10 and 12. Upon consideration of each of these assignments, it is our opinion that the assignment of error as to conclusion No. 10 is not well taken and should not be sustained, and as to the remaining assignments, Nos. 5, 6, 7 and 12, a majority of the court have reached the conclusion that each assignment is well taken and should be sustained.

With respect to conclusion No. 10, it appears that upon the whole record plaintiffs failed to clearly establish any ground as a basis for the removal of the trustee, that is to say, plaintiffs' evidence did not make a prima facie case for the trustee's removal and that this conclusion of law should be approved.

In so far as conclusions Nos. 5, 6 and 7 finding that, as a matter of law, there is no conflict of interest or divided loyalty shown by plaintiffs' evidence, particularly by reason of the dominant position held by George A. Bryant in The Austin Company on the one hand and his active participation in the business affairs of the trustee, together with the conflict of interest and evident antagonism between the beneficiaries and Mr. Bryant, a majority of the court is of the opinion that each of these conclusions of law, made

at the close of plaintiffs' evidence, should not be sustained.

As already indicated, the case must be reversed. It follows that plaintiffs' assignment as to conclusion No. 12 should be sustained.

4. The trial court sustained defendant's objection to plaintiffs' exhibit No. 179, and it was not received in evidence. This action of the court has been assigned as error.

Plaintiffs' exhibit No. 179 is a letter to W. B. Stewart from George A. Bryant, under date of March 20, 1941, relative to the matter of making common stock of The Austin Company available for purchase by key men of the company. The letter contains a list of names, presumably key men, who would be interested, including G. A. Bryant.

Both Stewart and Bryant were at the time officers and directors of The Austin Company. Mr. Stewart was counsel for the company. The trial court excluded the exhibit on the ground of privilege, pursuant to the statute (subdivision 1 of Section 11494, General Code).

After a careful examination of the briefs and authorities cited, we have come to the conclusion that the action of the trial court should be sustained. Even if the exclusion of this exhibit were error, such ruling of the court could hardly be prejudicial to plaintiffs, for the reason that the subject matter of the letter is substantially in the record by reason of evidence admitted without objection. This assignment should not be sustained.

5. The trial court vacated the temporary restraining order and found as a matter of law that the order should not have been issued. Plaintiffs assign this action of the court as error on the ground that it is contrary to and not supported by the evidence.

Unless otherwise provided by statute, the conduct

of fiduciaries is subject to review in a court of equity. Equity takes cognizance of transactions between persons occupying a fiduciary relation to each other. This source of equitable jurisdiction is uniformly recognized, and when equity assumes jurisdiction in this field, it acts in personam and gives aid to the vigilant rather than to those who slumber on their rights.

The evidence offered by plaintiffs shows clearly that George A. Bryant, on behalf of The Austin Company, has actively undertaken over a period of years to acquire by purchase for a given consideration the stock of The Austin Company held in trust by the trustee. The record discloses also that the trustee has given consideration to this undeviating purpose of Mr. Bryant and has taken steps to ascertain the value of this stock and was inferentially at the point of concluding the sale when this action was begun and the restraining order issued.

It should be noted that the threatened violation of rights which are contingent, or uncertain, or where there is an adequate remedy at law for any contemplated action, does not provide a basis upon which to invoke injunctive relief. However, where there is reasonable apprehension of impending injury, one thus threatened need not wait until the injury is actually sustained. ''One of the most valuable characteristics of equity is its power to prevent injury.'' 16 Ohio Jurisprudence, 47, Section 18.

Scott on Trusts, 1077, Section 199, discusses ''Equitable Remedies of Beneficiary.'' We quote as follows:

''A court of equity, having jurisdiction over the administration of trusts, will give to the beneficiaries of a trust such remedies as are necessary for the protection of their interests. * * * These remedies include (1) the specific enforcement of the duties of the trustee under the trust; (2) an injunction against a threatened breach of trust; (3) redress for a breach of

trust; (4) the appointment of a receiver; (5) the removal of the trustee."

See, also, Scott on Trusts, 1078, Section 199.2., and 21 Ohio Jurisprudence, 1081, "Threatened or anticipated Injuries," Section 68.

When a court of equity has taken jurisdiction over a given controversy, it will retain jurisdiction in order to provide present relief and do complete justice between the parties. This rule is applicable to the instant case.

On the allegations in the pleadings and on the evidence at the close of plaintiffs' case, it clearly appears that the beneficiaries had reasonable ground for apprehension that a sale of the trust stock was imminent and a reasonable probability that such sale under the circumstances shown might work irreparable harm and damage to plaintiffs, for which they had no adequate remedy at law. A majority of the court has reached the conclusion that the assignment of error now being considered should be sustained.

The judgment of the trial court is reversed and the cause is remanded for further proceedings according to law and the established principles of equity as the situation of the parties may require.

*Judgment reversed.*

DEEDS, J., concurs.
FESS, J., dissents.

DEEDS, J., concurring. I concur in the findings of error in the judgment of the trial court and the reversal and the remanding of this cause to the Court of Common Pleas for such further proceedings in accordance with rules of law and the settled principles of equity applicable to the continuing trust relationship as shown to exist in the case before us.

I do not concur in the finding that the trial court could not dismiss the third amended petition, as amended, of the plaintiffs at the conclusion of plaintiffs' case if the evidence was found to be sufficient to show only a prima facie case for the granting of any kind of immediate relief.

The difference of opinion on the question of procedure, however, does not affect the result reached by a majority of the court.

Although not necessary to be decided, it is my view that the third amended petition, as amended, should have been dismissed without prejudice.

The principal error in the judgment of the trial court, as this member of the court views the situation presented by the evidence, was the finding by that court that all of the issues of ultimate fact presented should be determined in favor of the defendant, which in my view amounted to a determination as a matter of law and for all practical purposes closed the door against the plaintiffs for the securing of any kind of relief during the continuance of the trust relationship, so long as the relation or status of the parties remain similar or substantially the same as is shown to exist by the evidence in the record before the court.

The suggestion is made by the trial court that the plaintiffs might secure an injunction in the event the Austin shares were being sold at an unfair price, but according to my view the securing of that relief would be problematical when the ultimate issues of fact which were determined in favor of the trustee are considered, including the court's interpretation of the extent of the authority granted the trustee under the trust agreements. Also, the condition should not be overlooked that in addition to Mr. Bryant's dominating position in The Austin Company and his influential position as a member of the board of directors of the trustee bank, he is also in the position of a fiduciary, with

joint authority to vote the trust-held shares of the beneficiaries in The Austin Company.

It might be said with some feeling of safety that with the present personnel of the trustee in control, the interests of the beneficiaries would be properly safeguarded, but unfortunately, as was stated by the trial court in another connection, time marches on and changes in personnel do inevitably occur, which is a main reason for the adoption by the courts of the acknowledged rule of law governing the trust relation that a condition of divided loyalty and a conflict of duties should not be allowed to endanger the trust estate.

The dilution and depreciation of the trust-held shares is evidence of what can take place under conditions where human ambition for great material gain is coupled with an advantageous position of trust and influence.

Much might be said concerning the manner in which a dilution of the trust-held shares was accomplished, although the responsibility for such depreciation is not for definite determination here.

In my view, it is brought about by a pernicious practice in corporate enterprises which endangers the otherwise great system of American free enterprise, due to the inequities and disparities which are the inevitable result of the use of those methods in corporate management. The possible relief afforded the beneficiaries of the trusts in equity can not be allowed to be stifled or curtailed in the future in a continuing trust relation.

As an example, since the trustee has exercised its authority in voting the trust shares in a change in the capital structure of the corporation and possesses that continuing authority, it could only be compatible with the exercise of that authority that the trustee should understand and be responsible to the extent of its au-

thority respecting changes and actions by the corporate managers which affect the proportionate value and status of the trust-held shares. Certainly, the settlors intended and the law requires that the trust estate be safeguarded and preserved under any and all circumstances within the reasonable powers of the trustee to do so.

The trust estate is of paramount concern in all situations, and the duty of the trustee is at least equal to the considered obligation of a substantial voting stockholder in a corporation and beyond in the case before us, for the reason that the trustee was selected as a specialist, equipped with knowledge, experience and facilities far greater than is possessed by the average stockholder in a corporation.

Equity, therefore, will not countenance any relaxation or evasion in the trustee's duty to exercise constant vigilance and the strictest loyalty in the protection and enhancement of the trust estate.

The Supreme Court of the state has made clear and unequivocal announcements embodying the principles applicable to and controlling trust relations in a number of decisions which have been cited and are so well known as to require no further emphasis here.

FESS, J., dissenting. Plaintiffs could have appealed on questions of law and fact and could have had a trial *de novo* in this court. However, they have elected to appeal on questions of law from the judgment below dismissing their third amended petition "for the reason that the proof adduced by the plaintiffs is insufficient to support the claim for relief asserted by the plaintiffs against the defendant and is insufficient as a matter of law."

The power and duty of a court in the trial of a chancery case upon the filing of a motion for judgment by the defendant at the close of plaintiff's case is differ-

ent from that of a judge in determining a motion for a directed verdict in an action at law. In an action at law tried with a jury, upon a motion for a directed verdict, the court is limited to determining the sufficiency of the evidence as a matter of law and may not determine any question of fact upon which the evidence may be in conflict.

But in the trial of an action at law without a jury, upon a motion by defendant for judgment at the close of plaintiff's case, the court may determine issues of fact as well as of law. If the plaintiff has presented a prima facie case without conflict, the motion should be overruled and defendant put upon his proof. If the plaintiff, at the close of his case, has offered no evidence upon a material fact required to be proved, the court determines as a matter of law that the plaintiff has failed to establish his case, and the petition is dismissed.[1] But if the plaintiff, at the close of his case, has offered evidence of such a character as to overcome any prima facie case made by him, the court determines questions of fact as well as law upon the defendant's motion for judgment, and common sense would require that at the instance of the defendant the litigation should then be terminated. *Euclid Arcade Bldg. Co. v. H. A. Stahl Co.*, 99 Ohio St., 47, 49, 121 N. E., 820.

In *Matthews* v. *State Mortgage & Investment Co.*, 119 Ohio St., 419, 164 N. E., 418, the Supreme Court applied the rule of the *Euclid case* to a chancery case, and in the course of its opinion, at page 421, said:

"An inspection of the record in the instant case discloses that, while plaintiffs adduced some evidence tending to prove the charges of misrepresentation alleged, there is a sharp conflict in the evidence present-

[1]Parenthetically, in such event neither party is entitled to separate conclusions of fact and law. *Bauer* v. *Cleveland Ry. Co.*, 141 Ohio St., 197, 203, 47 N. E. (2d), 225.

ed relating to the only claimed misrepresentations of material and existing facts, thereby requiring the weighing of the evidence by the Court of Appeals, which resulted in the conclusion that the evidence was insufficient to show any right to the relief prayed for.''

At the trial in the instant case, defendant was permitted to examine plaintiffs' witnesses at great length either upon cross or redirect examination by way of rebuttal, explanation and clarification of defendant's conduct, the difficult, if not delicate, problems encountered by the defendant, and even to the extent of supporting defensive allegations. On one occasion defendant was permitted to examine out of order one of its own witnesses, without waiving its right to move for judgment at the close of plaintiffs' case. Although such procedure is irregular, the order of proof and extent of re-examination of witnesses is within the sound discretion of the trial judge. This is particularly true in a case such as this, wherein the plaintiffs were allowed an unusually wide scope of inquiry relating to the history and world-wide ramifications of the business of The Austin Company, the numerous details incident to the settlement and administration of the trusts, and the alleged conflicts between the management of The Austin Company, and between the heirs of Samuel and Sarah Austin. The wide scope of this inquiry is reflected by a record of 2,690 pages with several hundred voluminous exhibits (including defendant's 45 exhibits).

It thus appears clear that upon the making of the motion in the instant case, it was the duty of the trial court as the trier of the facts and the law to weigh the evidence.

In the instant case, after 38 days of trial, common sense would require that, if the evidence be insufficient, the litigation be then terminated (*Euclid Arcade Bldg. Co.* v. *Stahl, supra*), and that defendant should not be

required to reintroduce the evidence theretofore already admitted. Nor should a court suffer the imposition of being required to rehear evidence already introduced and such additional evidence as zealous counsel might conceive to be necessary to support his defense, and with the strong probability of extensive rebuttal on the part of the plaintiffs.

In my opinion but three questions are presented on this appeal:

1. If a trustee is confronted with a conflict of interest, in the absence of evidence that as a result of such conflict such trustee has been influenced thereby toward acts inimical to the best interests of the trust, should such trustee *ipso facto* be removed?

2. If a trustee is confronted with a conflict of interest, in the absence of evidence that such conflict has influenced the conduct of such trustee to the detriment of the cestui que trust, in lieu of removal of such trustee, should a court of equity grant other and further relief under a general prayer therefor?

3. Is the judgment of the court manifestly against the weight of the evidence?

4. Are the findings prejudicially erroneous?

With regard to the removal of the trustee, as well as refusal to grant alternative relief, it may suffice to say that the writer concurs generally in the conclusions reached by the trial court in his opinion rendered some seven months after the submission of the motion of the defendant, but possible effrontery on the part of the dissenting member of this court provokes further comment. This controversy has its inception in the sagacious recognition by the settlor of the trust and founder of The Austin Company that his four daughters were not capable of participating in any degree in the management of the affairs of that company. To that end, he wisely provided that not even the trustee should vote the shares of The Austin Company held

by the trustee, but that they should be voted by his son and son-in-law, who were familiar with the business of the company. In the interest of maintaining the company as a close family corporation, he also gave to his son, W. J. Austin, the option to first purchase shares held by the trustee in the event of the sale thereof. Notwithstanding the extraordinarily large dividends received by his daughters as a result of the continued successful operation of The Austin Company under the policies of the settlor, his son, W. J. Austin, and later by George A. Bryant as president (augmented by the opportunities realized by World War II), jealousy has arisen between the daughters and their children on the one hand and the children of W. J. Austin on account of the latter's preferred position in the company and under the trusts. After all the prosperous dividends resulting from the holocaust of World War II, the daughters have a fear that the ambition of George A. Bryant, president of the company, to make the company an executive and employee-owned concern will ultimately deprive them and their children of the fortuitous bounty of their father and mother.

The officers of the trust company are confronted with a delicate, difficult, if not embarrassing, situation. The trust was accepted by the trustee with full power and authority to sell the stock, but subject to the option of W. J. Austin and his heirs, and without voting rights, except in the case of disagreement between the two persons appointed to exercise such rights.[2] Under the trust agreements, the trustee is bound to comply with the provisions thereof as directed by the settlors.

On the one hand is George A. Bryant, the aggressive, dominant president of The Austin Company, imbued

[2] No doubt the trustee could resign or be removed, but no provision for resignation or appointment of a successor trustee was made in the trust agreements.

with the ambition to carry on successfully the policy of his predecessors, the founder Samuel Austin and W. J. Austin, including the admitted policy contributing substantially to the success of the company of executive and key employee ownership of its common stock. In 1947, Mr. Bryant became a director of The Cleveland Trust Company. The writer of this opinion is not so naive as to believe that Mr. Bryant, as a director of The Cleveland Trust Company, in his firm belief that the future success of The Austin Company is dependent upon employee stock ownership, would lean backward and fail to exert his influence with the officers of the bank to acquire the Austin stock for the benefit of The Austin Company as well as for himself and other executives and employees at the best price obtainable.

On the other hand, the trustee is confronted with the jealousy of the daughters toward the W. J. Austin family, the obvious co-operation between the members of the W. J. Austin family with Mr. Bryant in controlling the policy and affairs of The Austin Company, the alleged loss of confidence in the trustee and apprehension that the trustee will be influenced by Mr. Bryant to sell the Austin stock at a figure less than its true value.

Nevertheless, the paramount duty of the trustee is to serve the best interests of the beneficiaries of the trust. But the trustee is bound also to carry out the duties imposed upon it by the settlors of that trust. Subject to the option to W. J. Austin and his heirs, it has the sole duty of determining when and at what price the Austin stock shall be sold. From a practical standpoint, the market for the sale of the trust-held stock is severely limited to sale to the Austin family, The Austin Company or its officers and employees. Upon the record in this case, if any criticism is to be directed toward the trustee, it is its policy (admitted-

ly that of all trust companies) of at least in part shifting its responsibility in determining the sale of securities to the beneficiaries rather than exercising the independent judgment that the settlor intended it should exercise when the trusts were established. The beneficiaries are entitled to be fully informed, but the ultimate decision whether to sell securities and at what price is the responsibility of the trustee. It must be recognized that practicality requires a trustee to consult with the beneficiaries in order to keep peace. But let it be observed what happened in 1937 when it was necesary for the trustee to provide for the payment of charitable legacies and inheritance taxes. The bank could have loaned the money to itself as trustee to pay such amounts, and thus have been charged with self-dealing. But there was no ready market for the stock, and when W. J. Austin offered to buy 400 shares at $100 per share and waived his right to purchase, it was offered to the daughters at $100 per share. Although the daughters were strongly influenced by their brother, W. J. Austin, and their brother-in-law, William Stewart, not to buy the stock, the decision was theirs to make, and the trustee can not now be criticized because of its failure to oppose the advice of Austin and Stewart. W. J. Austin, instead of buying the 400 shares of stock himself, caused The Austin Company to buy it, and now, counsel for the plaintiffs contend that the trust officer did not advise the daughters that the shares were worth more than $100. Surely the trustee can not be criticized for its failure to anticipate the substantial future earnings of the company resulting from World War II. Although the book value of the stock was $188 per share, the trial court very properly found, in view of the limited market, that there is no evidence in the record that the reasonable market value in August 1937 was more than $100. The attitude of the daughters and their able

counsel evidences wisdom of the settlor of the trust not to permit them to engage in the business of The Austin Company, and also to impose upon a trustee the responsibility of selling the stock.

On September 2, 1947, George A. Bryant, president of The Austin Company, became one of 18 directors of The Cleveland Trust Company. Mr. Bryant was imbued with the conviction that the future of The Austin Company depended upon the incentive program of sale of common stock to officers and employees and that the company should be owned by officers and employees. In March 1944 with the approval of the four daughters, he had been appointed proxy to vote the trust-held common stock of The Austin Company. On November 10, 1947, Mr. Bryant caused The Austin Company to seek an option on the trust-held shares. The trust officer promptly notified counsel for the plaintiffs of the option and later advised Mr. Bryant that the trustee had no power to grant such an option. Further negotiations transpired relating to the purchase by The Austin Company of the trust-held stock. On February 26, 1948, The Austin Company, through Mr. Bryant, made a formal offer to purchase the preferred and common stock. Before any action was taken by the trustee upon this offer, the instant action was instituted and on April 21, 1948, an injunction was issued herein and The Austin Company withdrew its offer.

As heretofore indicated, Bryant as president of The Austin Company and as a director since 1947 of the defendant company, desires to obtain the trustee-held stock for The Austin Company and its employees. The trustee is bound to consider any proposal to purchase the stock. Such consideration and negotiation for its sale does not evidence bad faith or divided loyalty. But the evidence fails to disclose that Bryant's influence as a member of the board has had any effect upon the trustee's judgment regarding the sale of the stock.

The president of the bank vehemently and resentfully denied that Mr. Bryant would or could influence his judgment with respect to the sale of the stock to The Austin Company. Whether or not this was window-dressing, was a question of credibility for the trial court—not this court—to determine.

By reason of Mr. Bryant's presence on the board of directors of the defendant trust company, the imminence of possible influence on the part of the trustee disadvantageous to the beneficiaries appears. But the mere possibility of influence, conflict of interest or divided loyalty is not sufficient to support either removal of a trustee or other relief. In every trust there is the possibility of a conflict of interest. A trusteeship offers an opportunity, if not a temptation, to disloyalty and self-aggrandizement. *In re Estate of Binder,* 137 Ohio St., 26, 27 N. E. (2d), 939, 129 A. L. R., 130. Therefore, a trustee must act with the utmost care, perspicacity and fair judgment.

Plaintiffs' counsel assert that by reason of Mr. Bryant's position as a member of the trustee's board of directors and the evidence of his ambition to acquire the trust-held stock of the corporation, a conflict of interest and divided loyalty to the trust is revealed, such as to warrant the removal of the trustee or at least other relief "without further inquiry." He thus seeks to apply the salutary principle "of no further inquiry" applicable to self-dealing, to abstract or potential conflict of interest or divided loyalty. This is not the law. Potential adverse influence or possibility of conflict of interest or divided loyalty is not the criterion, nor does the mere existence of such a conflict afford a basis for removal of the trustee.[3] To so

---

[3] *In re Trusteeship of Stone,* 138 Ohio St., 293, 34 N. E. (2d), 755, 134 A. L. R., 1306. upon which plaintiffs rely, involved retention by the trustee of its own stock. Such retention presented the opportunity to the bank to manipulate the shares to its own interest with results which could prove detrimental to the trust, *i. e.,* potential divided loyalty and conflict of interest and possibility of

hold would be to defeat the will of the settlor, because the settlor had the power to appoint the trustee and to specify the terms upon which it should act. It is not the abstract conflict or potentiality of divided loyalty that defeats the trust, but it is the administration that is decisive. And if conflict of interest or divided loyalty is revealed in the administration of the trust, a court of equity will intervene and grant relief.[4]

In other words, negligent conduct or overt acts inimical to the trust are requisite to support relief. Except in the apprehension and imagination of the beneficiaries of the trust fostered by their counsel, no harm has resulted to the corpus of the trust by any action of the trustee. Whether such stock should be sold to members of the Austin family, The Austin Company or on the open market and at what price, is a matter for the trustee to determine. But it is inconceivable that the trustee, in the light of the lack of confidence by the beneficiaries and the presence of Mr. Bryant on its board of directors, would undertake now to sell the stock without prior approval of a court of competent jurisdiction.

The judgment of the trial court upon the evidence

---

self-dealing. But the decision turned on the impropriety of the trustee retaining its own shares without express authorization therefor in the trust instrument. The syllabus of the case deals with divided loyalty evidenced by actual self-dealing and is silent with respect to the contention of the plaintiffs that potential adverse influence or possibility of conflict of interest or divided loyalty affords a basis upon which to grant relief.

[4]However, in *Union Savings Bank & Trust Co.* v. *Alter*, 103 Ohio St., 188, 132 N. E., 834, the Supreme Court held, in paragraph three of the syllabus: "Where a will by broad and comprehensive language empowers a trustee 'to sell and convey any of the property, real, personal or mixed, which may be the subject of this trust within said period of ten years from the date of my death, and to reinvest the proceeds of such sale,' a court, in the absence of a showing of fraud, collusion or bad faith, will not interfere with the discretion thus vested in such trustee with reference to a sale, by such trustee, of any of the property, the subject of the trust, and will not substitute its judgment for the judgment of such trustee."

adduced prior to the close of plaintiffs' case that the trustee should not be removed was, therefore, an appropriate exercise of sound discretion.

In lieu of removal of the trustee, should the court have granted other and further relief under the general prayer therefor? It is difficult to understand plaintiffs' contention that the court failed to exercise discretion in refusing alternative relief. Plaintiffs assert that "if the plaintiffs below adduced proof sufficient to call for an exercise of discretion, the lower court will be reversed without regard to whether or not judgment for the defendant would have been an abuse of discretion." They further assert that the court below considered only that proof was insufficient to support removal, and that if plaintiffs below adduced proof sufficient to support other relief, the lower court should be reversed.

Plaintiffs recognize the general rule that in a case involving the exercise of discretion, a reviewing court will not disturb the action below unless the record discloses an abuse of discretion. In their principal brief, in discussing possible alternative relief, counsel state that these points were repeatedly developed in conference with the court, from which it appears that the subject of alternative relief was before the court for determination and presumably was not ignored by the court in reaching its decision. Essentially, failure on the part of a court to exercise discretion is equivalent to an abuse of discretion. Cf. *Cincinnati, Sandusky & Cleveland Rd. Co.* v. *Sloan,* 31 Ohio St., 1, 13, 14. As is stated in 2 Ohio Jurisprudence, 1063, Section 589, before judicial action can be justified on the ground of discretion, the case must, of course, be one calling for the exercise of discretion. In the instant case, the granting or refusing of alternative relief called upon the trial court to exercise its discretion upon the evidence adduced. The Supreme Court has defined

"abuse of discretion" in relation to the granting of a motion for new trial as connoting more than error of law or judgment and as implying an unreasonable, arbitrary or unconscionable attitude upon the part of the court. *Steiner* v. *Custer,* 137 Ohio St., 448, 31 N. E. (2d), 855; *Klever* v. *Reed Bros. Express, Inc.,* 154 Ohio St., 491, 496, 96 N. E. (2d), 781. The rule generally applicable is that an order or ruling made, or act done, by a court in a matter within its discretion will not be disturbed by a reviewing court unless it plainly and manifestly appears that there has been an abuse of discretion, and that thereby the rights of the party complaining have probably been prejudiced.

In 21 Ohio Jurisprudence, 1006, Section 17, it is stated:

"As a rule an application for an injunction is addressed to the sound discretion of the court, its allowance being a matter of grace rather than of strict right, and determined by the nature of the case, the peculiar facts presented therein, the law governing the same."

As said by this court in *VanFleet, Inc.,* v. *Bayer Medicine Co.,* 61 Ohio App., 14, 21, 22 N. E. (2d), 298:

"The right to invoke the extraordinary remedy of injunction is not an arbitrary and vested right. Its allowance is rather a matter of grace and good conscience. A court of equity has a large discretion in granting and refusing the writ in a particular case."

The above principles are particularly applicable to this appeal on questions of law in a chancery case. "Sitting as a court of error to review the action of the chancellor in this case, we are not at liberty to disturb his findings and decree, unless it shall appear from the record that he has disregarded and violated these principles—that he has abused this discretion. We have not the same freedom and authority in the premises as if the case were here on appeal." *Eleventh St.*

*Church of Christ* v. *Pennington,* 18 C. C., 408, 413, 10 C. D., 74.

As in the case of the trial court's refusal to remove the trustee, its refusal upon consideration of the evidence to grant other and further relief, such as continuing the injunction, was not such an error of discretion, judgment, or of law, as to warrant a reversal.

Nor is the judgment in my opinion manifestly against the weight of the evidence. As in the case of *Krell* v. *Krell Piano Co.,* 14 Ohio App., 74, 78, we must approach consideration of the evidence upon this appeal on questions of law under the rule that the judgment will not be disturbed unless the record shows clearly and satisfactorily that it is manifestly against the weight of the evidence. The credibility of the witnesses can not be considered, and where the evidence is merely conflicting, the determination of the trial court as to such evidence will not be disturbed. Were we trying this case *de novo*, we might well have reached different conclusions, but as a reviewing court on error, we can not substitute our judgment for that of the trial court, particularly in a case involving exercise of equitable discretion. As heretofore stated, the granting of affirmative equitable relief such as is sought in the instant case is a matter within the sound discretion of the court, and to support a reversal the evidence supporting relief should be so clear and indisputable that denial of relief would constitute an abuse of discretion. No such abuse of discretion is revealed in the record upon this appeal.

With respect to the findings, Section 11421-2, General Code, requires that upon request of a party with a view of excepting to the court's decision upon questions of law involved in the trial, the court shall state in writing the conclusions of fact found separately from the conclusions of law. The findings of the court do not comply with the mandate of the statute. The

facts are not found separately from the conclusions of law. Instead of ultimate facts, evidentiary as well as immaterial facts argumentative in nature are included. Conclusions of law are intermingled with conclusions of fact. It is true that in the light of the decision finding that the plaintiffs were not entitled to any relief, the request for separate conclusions called for more or less negative findings. The writer has concurred with the majority in sustaining the assignments of error directed to conclusions of fact Nos. 10 to 14, 19, 20, 22, 23, 25, 50, 51, 53, 54, 65, 70, 71, 73 to 80. But the failure to enter proper conclusions is not prejudicial to the plaintiffs, inasmuch as a complete bill of exceptions has been reviewed by this court in determining the assignment of error that the judgment is against the weight of the evidence. *Oxford Township* v. *Columbia*, 38 Ohio St., 87, 94; *In re Guardianship of Zimmerman*, 78 Ohio App., 297, 70 N. E. (2d), 153. Cf. *Shunk* v. *Shunk Mfg. Co.*, 86 Ohio App., 467, 473, 93 N. E. (2d), 321.

A majority of this court has also sustained assignments of error directed to conclusions of law Nos. 5, 6, 7, 10 and 12. But prejudicial error is to be predicated upon the judgment and not upon the conclusions of law. Conclusions of fact separately from those of law enable a party to determine whether the findings of fact warrant the legal conclusions reached by the court in rendering its judgment. A finding of facts as distinguished from conclusions of law alone is important, because separate conclusions of law have no place or function in a record for the purpose of review. The reviewing court determines only whether the judgment properly follows the finding of facts. The legal reasons stated by the court for its judgment are only advisory, and may be erroneous as propositions of law, although the judgment may be correct. The important right of the litigant is to have a statement of facts in a

proper case as the basis of the court's judgment, whereas the legal conclusions, aside from the judgment, are unimportant. *Bauer* v. *Cleveland Ry. Co.,* 141 Ohio St., 197, 203, 47 N. E. (2d), 225 (obiter dictum).

In the case of a decision in favor of a plaintiff, the making of findings upon request of the defendant enables the defendant to attack the conclusions of fact as not supported by the evidence and also to attack the judgment as not supported by the conclusions of fact. But the entering of findings upon request of a plaintiff in the face of a decision in favor of a defendant is of doubtful efficacy to such plaintiff. The decision in itself calls for negative findings. In the instant case, after the elimination of the conclusions of fact enumerated above, it can not be found that the judgment is erroneous or prejudicial. In such a predicament, the plaintiff is relegated to assigning as error the failure or refusal of the court to make findings in accordance with plaintiff's requests therefor.

The record in the instant case indicates that the court rendered its decision in a written opinion in September 1952. On October 27, 1952, plaintiffs, in writing, requested generally conclusions of fact and of law. On November 19, 1952, plaintiffs filed a supplemental request for findings of fact in which they assert that plaintiffs have proposed a short entry, finding no facts and making no conclusions except that as a matter of law the case must be dismissed on the proof submitted. Plaintiffs further asserted in the application that the defendant has included in its proposed journal entry a long and complicated finding covering many facts both directly and by implication, for the most part consisting of a paraphrase of the opinion of the court. Plaintiffs objected generally to the inclusion of findings in the journal entry and particularly to variations from the findings in the

opinion and to certain specific proposed findings. The grounds for the objection are (1) the findings were proposed and will be used for ulterior purposes (in other litigation) not connected with the instant case, and (2) the conduct of the trustee in submitting the proposed entry was an imposition upon the court, on plaintiffs' counsel and upon the beneficiaries of the trust whom the defendant professes to protect. Thereafter the application requests the court to make extensive findings. These requested findings are subject to the same criticism as directed to the formal findings of the court. Except by way of historical background, many of them are immaterial, others present mixed conclusions of law and fact, others are highly argumentative, and some are predicated upon conflicting testimony. It is significant, however, that a review of plaintiffs' requests as a whole would not result in a conclusion that the judgment was contrary to law on the facts. The writer, therefore, concludes that no error prejudicial to the plaintiffs can be predicated either upon the making or the refusal to enter conclusions of fact separate from the conclusions of law.

The inclusion of some 27 conclusions of fact and law in the journal entry was erroneous. Long ago, the Supreme Court said that a judgment is not properly part of the trial, but forms the subject of a distinct title in the Code; that a finding by the court precedes the formal decree. *Commercial Bank of Cincinnati* v. *Buckingham,* 12 Ohio St., 402, 406. Neither conclusions of fact nor conclusions of law, except the finding and judgment, have any place in a journal entry. Nor can it be said that the inclusion of such findings is not prejudicial to the plaintiffs. But, although the judgment may not be affirmed, such error of commission does not require a reversal, but rather it requires the exercise by this court of its power of modification. In the opinion of the writer, the judgment should be modi-

fied by striking therefrom all of such conclusions erroneously included therein, leaving as the judgment of the court the first sentence incorporating the general finding and the last four paragraphs comprising the judgment. As so modified, the judgment should be affirmed.

FESS, CONN and DEEDS, JJ., of the Sixth Appellate District, sitting by designation in the Eighth Appellate District.