FERRIS, ESTATE OF, IN RE.

Probate Court, Cuyahoga County.

No. 553646.   Decided May 7, 1962.

*Messrs. Baker, Hostetler & Patterson, Messrs. Squire, Sanders & Dempsey, Messrs. Thompson, Hine & Flory* and *Mr. Paul B. Roesch.*

MERRICK, P. J. This cause comes on for finding and decision pursuant to an order of this court entered March 27, 1962, wherein this Court, on its own motion, pursuant to authority and jurisdiction conferred by Section 1107.16, Revised Code, ordered an investigation into the affairs and management of the within estate and trust by The Cleveland Trust Company as corporate fiduciary and Howard L. Barkdull as co-fiduciary.

It is necessary to recite and to review many facts and circumstances incident to this administration, particularly with reference to the conduct and activity of the co-fiduciaries in connection with the dissolution of the Cleveland Savings Society in the Court of Common Pleas, No. 719,002. This litigation will be referred to as the "Society case and the Society bank as Society." The corporate fiduciary herein will be referred to as Cleveland Trust and the co-fiduciary as Barkdull.

This Court appointed Paul B. Roesch, Esquire, as investigator. Mr. Roesch brought to this assignment his reputation at this bar as a lawyer of long standing and capability and a wealth of experience in probate practice. To him this Court expresses a feeling of gratitude and commendation for the diligent and efficient manner in which he carried out this most important trust. At the outset Mr. Roesch stated to the Court that he desired no compensation and would seeek none and that further, he would personally absorb all expense incidental to carrying out the commission of the Court.

Much of the evidentiary phase of the investigation is presented by interrogatories and the answers thereto and documentary evidence and exhibits. These will be kept on file in this case and may be perused by any interested person.

The co-fiduciaries herein were appointed March 11, 1958. The inventory, filed May 21, 1958, and thereafter approved, disclosed an estate in excess of seven and one-half million dollars, mostly in securities. There was a bank account with Society in the amount of $116,000.00. There was considerable holding in Du Pont common stock which was appraised at

$6,706,152.00. The decedent, Mrs. Ferris, had been a depositor in Society in substantial amounts and balances for more than twenty-five years preceding her death. The will conferred upon the fiduciaries the usual broad powers of control and investment. This is standard language in wills in large estates and the scrivener of the will usually follows a form or advice of the trust company to be named as fiduciary in drawing such a will. If the powers are too limited, or the estate too small, corporate trustees usually decline the appointment for the simple reason that they prefer broad powers and cannot profitably handle small estates. The fiduciary fees are fixed by statute and rule of court, depending upon the extent of the assets in the estate.

According to the accounts filed by Cleveland Trust in the Ferris estate to date it has paid itself $137,500.00; Squire, Sanders and Dempsey $80,000.00 and Howard Barkdull $37,-500.00 for services rendered to the estate, or a total of overall fees of $255,000.00.

It is significant to note that the first partial account, filed February 20, 1959, and the second partial account, filed April 27, 1960, bore the endorsement of Harvey Hobson and his firm, Thompson, Hine and Flory as attorneys for the fiduciary. Upon inquiry by the court investigator it was determined that Mr. Hobson and Thompson, Hine and Flory rendered no services in this estate and prepared no documents or accounts. It has been the practice of some trust companies, including Cleveland Trust, to prepare accounts and other legal documents and in the bank offices endorse the name of counsel chosen by it and file same without the law office performing extensive services in the estate. While this Court is interested in keeping corporate trustees within their proper area in these matters, this does not seem to be the time or place to reiterate in too much detail the admonition that banks should not practice law and should observe the law that permits them to act as their own counsel when acting as fiduciary but should apprise the Court when so acting. In this investigation it became necessary for the Court to examine the file in the estate of McCambridge, Probate Court No. 542308. In the office of the Cleveland Trust Company, there was prepared by the employees of that bank a petition for distribution. This was forwarded to the fiduciary

in Toledo, Ohio, for execution and verification; was returned and on December 31, 1961, filed by the bank with a Referee of Probate Court. There was no indication that any counsel had prepared the pleading. A copy was sent by the bank to Roland Reichert, attorney for the estate, but he had no part in this transaction whatsoever. At that time, Cleveland Trust was merely depository and fiscal agent for the fiduciary and had no right at law or in ethics to prepare and file this pleading. In the answer filed to interrogatories herein by Cleveland Trust, it states it had been engaged as agent for the fiduciary in the McCambridge estate in connection with the administration and that it was more feasible for Cleveland Trust to furnish its own counsel in the *Society case* with information in the McCambridge estate in support of its theory in the Ferris and McCambridge interventions in the Society case.

Coming now to consider the position which the Cleveland Trust took in the *Society case*. Without consulting the Probate Court or the distributees in the estate, it engaged special counsel to intervene in the *Society case*, and having been rejected in its position, it filed an appeal, now pending in the Court of Appeals. The reason given by Cleveland Trust is that it had broad powers to preserve the assets of the estate and to bring into the estate any money or property due at the time of the death of the decedent or thereafter.

It is common knowledge and practice by trust companies and their counsel, that, notwithstanding the terms of the will, in an unusual situation, the Probate Court is consulted for guidance and advice. The Cleveland Trust has frequently done this in the past and very often when the Probate Court suggests that full powers are given under a will, the Cleveland Trust and others similarly situated will retort to this suggestion, that the corporate fiduciary wishes to be very careful not to do anything that might be in the least bit questionable. In these instances, the Probate Court looks to the wishes and desires of the distributees in the estate and in most instances makes formal advisory decision in the matter. As previously cited, no opinion was sought from the Probate Court and no advice or consent secured from the heirs.

Cleveland Trust surely realized that the intervention as

fiduciary in the *Society case* would be suspect. What net profit from the litigation would enure to this estate? While the Cleveland Trust and its special counsel say that they expected all fees to be paid out of the surplus in the *Society case* and that conclusion was arrived at because the intervention was in the nature of a class suit. By what authority does an executor of an estate undertake to bring an action for the benefit of others? If, by any stretch of legal imagination this theory was tenable, then why did it not determine that its position was rare and unusual and the Probate Court should be consulted for direction and advice. At that time there was already intervention on behalf of the class similarly situated which was adequately represented by able counsel.

The investigation in the current matter discloses that a great number of contacts were made by special counsel with officers and employees of Cleveland Trust and very few contacts with Mr. Barkdull, co-executor. This presents an odd situation. Cleveland Trust claimed that Mr. Barkdull's law firm, Squire, Sanders and Dempsey, while acting as attorney for the estate, declined to bring action for the executors in the *Society case* for the reason that another partner, Mr. Dempsey, was a director of Society. This Court must directly place the stamp of incredulity on this contention. If it was improper for Squire, Sanders and Dempsey to act as attorney in a suit against Society and the question of divided loyalty might be raised, why was it proper for Mr. Barkdull, a member of that law firm and co-fiduciary, to adversely sue Society while Mr. Dempsey was a director of Society?

The Court is of the opinion that this estate was devoid of complications, except those generated by the co-fiduciaries in intervening in the *Society case*. True, the estate grossed seven and a half million dollars and was in the 76% bracket of death taxes. The will divided the residue into shares, one of which was to pass into a trust. As soon as the statutory time had passed and taxes had been determined and paid and all other charges paid, the estate could have been closed. Instead it has been kept open for an unusually long time, merely because the intervention in the *Society case* is pending.

It is interesting to note the position taken by Cleveland Trust in explaining its duty and conduct as fiduciary in handling

the balance on deposit in Society ($116,000.00) at the time of its appointment and immediately thereafter.

February 27, 1959, Cleveland Trust filed an answer and intervening petition in the *Society case*. It stated in that pleading that the balance in Society belonging to the Ferris estate was withdrawn "in order to have funds to provide for the necessary expenses of administering said estate and for the payment of estate and inheritance taxes, on or about the second day of April, 1958, withdrew the funds * * *" This statement was challenged by opposing counsel, and on June 30, 1961, in the trial of the *Society case* (Page 411) counsel for Cleveland Trust amended that statement to allege that "it was necessary to withdraw this money to pay the debts and administration expenses, because there were more bills coming due which would have made the estate overdrawn if it hadn't been for the withdrawal of these funds * * * and the executor wanted to get funds in a place where it would not be subject to the very high income taxes which this estate was subject to, so * * * it was * * * trying to invest * * * where it wouldn't have to pay income taxes, that is Municipal bonds, and that is what, among other things happened to this mony. These funds were not used either for estate taxes or Federal estate taxes. Of course it would have been fully inadequate, made hardly a dent on those taxes anyway."

After the decision by Judge Wasserman and the filing of an appeal by the fiduciaries herein, for some reason or other Cleveland Trust issued an inter-office communication to its many executives and employees in managerial positions. The subject was "Liquidation of Society for Savings in the City of Cleveland." It was dated March 6, 1962, and was signed by the president of Cleveland Trust. This is a very long and detailed message. Why was it necessary for Cleveland Trust to explain its position in the appeal of the *Society case*? Were people asking questions at their many branch banks? Was the position of Cleveland Trust being questioned? Were some accusing the Cleveland Trust of selfishness and self-dealing in the matter? Of what import was the conduct of the Cleveland Trust as a fiduciary to its many executives, engaged solely in conducting its banking business? In the communication the president of Cleveland Trust cast aspersions upon some mem-

bers, trustees, directors and officers of Society by alleging that they made deposits in new accounts or old between December 1, 1957, and December 31, 1958, cut off date set by the court in the *Society case,* and that they were included in the benefits plan as to surplus, submitted by Society, but that the court had barred this class of depositors from participating in the plan finally ordered by Judge Wasserman. In this order by the Judge the president of Cleveland Trust agreed and so stated in the communication. This court feels that this portion of the communication discloses the real incentive and purpose which prompted Cleveland Trust in the intervention as fiduciary and the resulting appeal. Of what importance to the inquiring public would the agents of Cleveland Trust give to this phase of the case when the trial court had set up the bar? What had this phase to do with the right of the Ferris estate to participate in the distribution? The inter-office correspondence containing this reference reads like a release by a public relations expert who designed to sandwich a forceful smear between otherwise harmless recitals in the communication.

In this message the Ferris deposit withdrawal was discussed. It was boldly stated that the funds were not kept on deposit with The Cleveland Trust Company as "certain people would have you believe," but that $43,000.00 was withdrawn to be used in the administration of the estate and the balance thereof invested on or about June 10, 1958, in tax free securities. Obviously by this statement Cleveland Trust was passing out the theory that it had not taken over this Society balance as a deposit in Cleveland Trust to be used and controlled as it saw fit.

A close check of the accounts and records of Cleveland Trust will prove that both the statement made into the record in the trial of the *Society case* by counsel and the statements made by the president of Cleveland Trust in the communication to executives and employees were both far from the facts and made to give off the impression that Cleveland Trust was overly diligent in the handling of this deposit. The statement that the withdrawal was re-invested in tax free securities to save cost to the estate does not jibe with the facts.

Let us review the situation at the time of the withdrawals.

The first withdrawal from Society was in the amount of $10,000.00 made on March 13, 1958, without waiting for the dividend date of April 1. The balance of $106,716.45 was withdrawn on April 2, 1958. These sums were transferred into the principal account at Cleveland Trust. Was it necessary to withdraw this money to pay any current or pressing obligation? Was it withdrawn for re-investment at a better net return? Was it withdrawn to add more than a hundred thousand dollars to adequate cash on hand by Cleveland Trust?

There was more than enough to pay her debts in Mrs. Ferris' checking account. Money was coming in so fast in dividends, coupon and accrued payments and from the sale of securities, that without the money transferred from Society, between the time of appointment as executor and December 10, 1958, from these sources there had been received $184,614.95. In addition, in that same period there had been received for the sale of various securities and for maturing securities an aggregate of more than three million dollars.

There was re-investment, in state and municipal bonds, during this same period, an aggregate of approximately the same three million dollars. On December 11, 1958, Cleveland Trust had in cash in principal and income account, $281,851.49.

In addition to this income and at the time Cleveland Trust contends it was necessary to withdraw and use the funds on deposit with Society either to pay debts or to re-invest in securities which would be more productive. Cleveland Trust had on deposit in commercial and savings accounts left by Mrs. Ferris $413,850.00, which it kept on deposit, used for its own purposes and paid regular bank interest for the use thereof. On April 6, 1959, the Cleveland Trust bank account was closed out and the money placed in the principal account of the estate. If it was necessary to close the Society account, why was the Cleveland Trust much larger account left open? The answer is simple. Banks advertise for new accounts, additional deposits and time deposits. Building and loan associations do likewise and give premiums to depositors. Why? Money is a profitable commodity. It sells for more than the banker pays for it. In this instance Cleveland Trust wanted $116,000.00 more in its control and out of the market in which Society might use it.

By virtue of Section 1107.12, Revised Code, a trust com-

pany is permitted to deposit funds, held by it as a fiduciary, in a trust account under the same conditions as it would accept the same while not acting as a fiduciary.

It has been contended that any distribution out of the Society surplus which might have been received as a result of the intervention of Cleveland Trust would not be subject to inheritance or death taxes. The letter submitted by Cleveland Trust, which was received by Society from the Division of Internal Revenue, is not decisive of this question. It is important because the Ferris estate is in the 76% bracket for inheritance and death taxes. This Court cannot agree with the contention of counsel that if in subsequent proceedings the Ferris estate is entitled to share in the surplus of Society by virtue of the account owned by Mrs. Ferris and later, her executors, that there would not be an acceleration in value, subject to tax. This is just another element which reduces the probable net value of any recovery so far as the heirs are concerned. Counsel for Cleveland Trust contend that it might be possible to realize $27,000.00 of this surplus for the estate. While any figure would be speculative, it must be conceded that the further back the cut off date is moved, the more will be the participation. As has been contended, the amount of surplus has been fixed at approximately forty million dollars and that figure is not questioned in the appeal. If the participating dollars on deposit are to share on a percentage basis of this fixed amount of surplus, then the higher the dollar participation, the lower the percentage per dollar. If we are to be realistic, we must assume that if the participating cut off date were to be moved back, resulting in an increase of participating dollars, the percentage would drop below 15%. So we are considering a possible recovery in the area of 15% of $116,000.00 or less. This would be a figure of approximately $17,500.00. If this amount would be subject to death taxes, the net to the heirs would be negligible, even though the expense and attorney fees would be reduced in net by 76%.

Counsel contend that they expect no fees unless they are allowed out of Society surplus. But still there are expenses. Seventy-five hundred dollars ($7500.00) has already been paid out for the record and there might be more out of pocket expense. All this complicates and beclouds the entire transaction.

This is the best argument that could be made in support of the theory that the consent of the heirs and the approval of the Court should have been sought at the outset.

The court investigator reports that the majority of heirs do not advocate this litigation. Some have indicated that it is distasteful and embarrassing to them to further continue this litigation.

The law has always held out the admonition to the fiduciary to be like Ceasar's wife in the conduct of the trust. Would the impression be dominant that Cleveland Trust was engaging in harassment of a rather new arrival in the local field of trust banking? This form of banking business is highly lucrative and the trust companies spend large sums of money to advertise for this business. It is also commonly known that officers and employees of trust companies are continually conducting advisory and other tactics to encourage their rich depositors to set up trusts, living and testamentary.

Cleveland Trust and its special counsel are surely aware of the absolute admonition of the law to the effect that one's own selfish interests, remote as they may be, should never taint the conduct of one acting in a fiduciary capacity. Cleveland Trust and its special counsel were both in the case of *Manchester* v. *Cleveland Trust Co.*, 95 Ohio App., 201. The Court of Appeals in deciding that case in which divided loyalty of Cleveland Trust was assailed, laid down or reiterated some salutary admonitions to fiduciaries. The first four syllabi of that case read as follows:

"1. A trustee, being a fiduciary of the highest order, is charged with the utmost fidelity to his trust and must refrain from creating situations where his own interests are brought into conflict with those of the trust.

"2. Every trustee is presumed to know the obligations and limitations in relation to his fiduciary duties and, if there is failure to observe them, must abide the consequences, since the welfare of the *cestui que trust* is the focal point of every consideration of duty and loyalty of the trustee.

"3. A court of equity will regard the well-being of the trust and its beneficiaries as a matter of primary concern and will require the trustee at all times to sustain an undivided loyalty toward the beneficiaries of the trust.

"4. A conflict of interest is incompatible with undivided loyalty of the trustee toward the *cestui que trust.*"

Quite apart from any statute, courts in the exercise of their jurisdiction over the administration of trusts have been accustomed to give instructions to trustees at their request as to their duties and powers. A trustee is not compelled to act at his peril in the administration of the trust. He need not act first and discover later whether his act was in breach of trust. He is entitled to the instructions of the court as a protection. Scott on Trusts, P. 1465.

Section 2101.24, Revised Code, spelling out the jurisdiction of the Probate Court provides that the court may direct and control the conduct of executors, administrators and other fiduciaries. Good faith alone will not protect a trustee, but he must also exercise diligence, prudence and absolute fidelity. *U. S. Trust Co.* v. *Sullivan,* 69 F. (2d), 415. It might be appropriate here to quote the words of one of the greatest legal minds ever to grace the bench of this country.

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity, when petitioned to undermine the rule of undivided loyalty, by the 'disintegrating erosion' of particular exceptions * * * only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." Judge Cardozo in *Meinhard* v. *Salmon,* 249 N. Y., 458, 164 N. E., 545.

This Court has no desire to assail the law or the system which prevails in the administration of large estates by corporate fiduciaries. Ordinarily they do an excellent job, frequently with the advice and consent of the Court and participating beneficiaries. But an overstepping of the rules of fairness, propriety and faithfulness will be the foundation wreckers of a large and profitable business enjoyed by local trust companies. Because one is great or large, or both in its chosen field, does not give that one the right to be the law or the rule

unto itself. This Court is of the opinion that Cleveland Trust overstepped the boundary of undivided loyalty to the beneficiaries herein. The next step should be one that would restore this estate to a position nearing completion, where the heirs will be relieved of anxiety and further embarrassment. To them the prize sought seems almost infinitesimal when compared to their consciousness of the long gamble involved and the continuation of personal and public criticism which they have borne and will have to bear in the future unless relieved in a situation in which they find themselves unwillingly entrapped.

The Court will direct itself to first answering the second request in the answer of the co-fiduciaries, viz:

"That this Court instruct these co-executors as to what action or actions should be taken by them in the Court of Appeals for Cuyahoga County with respect to the appeal now pending in that Court."

To that request the Court directs the co-executors to dismiss the appeal now pending in the Court of Appeals and proceed to close the estate of Ferris and establish the trust created thereunder.

Directing itself to the first question, the Court states that any conduct by the co-executors, other than that controlled by the instructions of this Court as directed above, must await the will of the heirs upon the presentation of the final account herein. It has always been the practice of this Court to approve any account or expenditure if the distributees in the estate consent thereto.