OLLICK, APPELLEE, *v.* RICE, TRUSTEE, ET AL., APPELLANTS.

IN RE ESTATE OF DETLEFS, DECEASED.

IN RE ESTATE OF MILLER, DECEASED.

(Nos. 46303, 46463, 46758, 46611, 46612 and 47339—Decided March 12, 1984.)

*Mr. John G. Salmon,* for appellee.

*Mr. Daniel P. McDonnell* and *Mr. Frank B. Moore,* for appellants.

ANN MCMANAMON, J. This consolidated appeal arises from three actions below[1] which were filed by plaintiff-appellee, Carol Ollick, against

---

[1] *Ollick* v. *Rice,* C.P. No. 046,048. *In re Estate of Detlefs,* Probate Div. 909,623. *In re Estate of Miller,* Probate Div. 908,020.

defendants-appellants, John P. Rice and Ralph A. Stark, in connection with Rice's administration and Stark's involvement in the probate of the estates of Irma Louise Detlefs and Beatrice Miller as well as a trust established by Detlefs prior to her death.

Two of these actions originated in the probate division and one in the general division of the common pleas court. The facts pertinent to the probate division actions are relatively undisputed.

Irma Detlefs and Beatrice Miller were sisters. Beatrice died testate on March 4, 1980, leaving her entire estate to Irma. On March 21, 1980 Irma executed the inter-vivos trust which is a subject of this litigation, appointing appellant Rice as trustee, appellant Stark as the successor trustee and naming appellee Ollick as beneficiary. At that time Ollick was sixteen years old. On April 18, 1980, Irma Detlefs died testate leaving her residuary estate which in fact comprised the bulk of the probate estate to the trust she had established.

Both appellants are attorneys and, while not partners, conduct their legal practices from the same offices. In addition, Stark is a licensed real estate broker and an officer and shareholder in Forest Hills Realty Company.

Under the terms of Irma Detlefs' will, Rice was executor and ultimately became administrator de bonis non with will annexed in the Beatrice Miller estate after the death of Irma Detlefs, the executor named in Beatrice's will. Rice subsequently engaged Stark as attorney of record for both estates.

In the course of the administration three transactions occurred which are the subject of the probate matters consolidated in this appeal.

Rice, through an oral agreement with Stark, employed Forest Hills Realty Company to sell the residences of each decedent. As a result of these sales, Forest Hills received real estate commissions from the estates totalling $7,490, of which sixty-five percent went directly to Stark as a company shareholder. In a second transaction Rice paid $500 to his secretary for the preparation of estate tax returns in the Miller estate. Finally, Stark purchased a 1966 Plymouth automobile from the Detlefs estate for its appraised value of $150.

The first partial account in the Miller estate was filed on January 23, 1981 and reported attorney fees to Stark in the amount of $2,000 and executor fees to Rice in the amount of $2,000.

The final and distributive account in this estate was filed on January 13, 1982 and reported attorney fees to Stark in the amount of $4,231 and executor fees in the amount of $1,341.

Neither of these accounts reflected that a real estate commission on the sale of the Miller house was paid to Stark. Payment was shown as a real estate commission to Forest Hills Realty Company. The $500 payment for tax preparation also failed to indicate to whom payment had been made.

The first partial account in the Detlefs estate was filed on January 21, 1981 and showed attorney fees paid to Stark in the amount of $3,000 and executor fees to Rice in the amount of $2,500. This account also indicated a real estate commission of $4,440 had been paid to Forest Hills Realty.

On January 27, 1982 the second partial account in the Detlefs estate was filed, reflecting that attorney fees of $12,500 had been paid to Stark and that Rice had received executor fees of $2,500.[2]

On March 3, 1982 appellee filed ex-

---

[2] An inventory and appraisal of the Detlefs estate filed on September 18, 1980 listed assets of $231,135.78, of which $92,035 represented property from the Miller estate.

ceptions in probate court to the accounts which had been presented in both estates. On May 12, 1982, she also filed motions seeking to vacate the court's entries approving the final account in the Miller estate and the partial account in the Detlefs estate. In these motions appellee alleged that the accounts were not true and correct by reason of mistake or fraud in the matters of real estate commissions, the sale of the Detlefs' Plymouth automobile and the fee for the preparation of the Miller estate tax returns.

These cases, with motions involving both estates, were consolidated for hearing before a referee on June 21, 1982.

On October 21, 1982 the referee issued his report, recommending that the real estate commissions, the tax preparation fee and the Plymouth automobile be returned by appellants to the Miller and Detlefs estates. On February 9, 1983, the court filed a judgment entry approving and adopting the referee's report.

Subsequently, on February 22, 1983, appellee filed a motion to vacate the court's entry approving attorney fees in the Beatrice Miller estate. In her motion, Carol Ollick contended that the fees which had been paid were in excess of those allowed by court rule and without her consent as an interested party. On July 18, 1983, the court adopted and approved a referee's report and recommendation that appellee's motion be granted. The previous award of attorney fees was vacated and Rice was ordered to refile an application for allowance of fees.

Appellants raise five assignments of error in the probate proceedings, none of which is well-taken.[3]

During pendency of the probate cases, appellee, on July 19, 1982, filed

___

[3] See Appendix A in which these assignments of error are numbered VII, VIII, IX, X and XI.

her complaint in the general division of common pleas court seeking judicial intervention in a dispute with appellant Rice over his administration of the Detlefs trust and his performance as trustee. Her complaint also raised several of the issues pending in the probate court.

Appellee alleged that Rice had breached his duties as a trustee in his failure to distribute trust income and to comply with other trust provisions. The appellee also contended that Stark and Rice had, by reason of illegal and unethical conduct, committed malpractice. Ollick sought Rice's removal as trustee and Stark's removal as successor trustee, as well as orders that Stark repay the real estate commissions, return the Plymouth automobile, and distribute trust income. She further asked for a temporary restraining order and preliminary injunction preventing Rice from making trust investments without prior court approval. Ollick also asked for her attorney fees, and compensatory and punitive damages of $100,000.

On July 23, 1982 an agreement was reached between the parties which resulted in payment to appellee of $3,500, representing a part of the interest earned by the trust with $500 to be paid her each month thereafter. On November 22 and 23, 1982 a trial on the equitable matters was heard by the court. On December 6, 1982 the court issued the following order:

"Ralph Stark is hereby removed as successor trustee. John P. Rice, Jr. shall hold until further order of the Court all assets of the trust, shall immediately distribute to the beneficiary 80% of the income of the trust earned since settlement of the trust, shall receive all other income of the trust and distribute 80% of it to the beneficiary as received, shall not make any other payments out of trust assets including trustees fees without approval of the Court, shall

promptly notify this Court and beneficiary of all notices received with respect to trust assets and shall file and serve upon the beneficiary by December 13, 1982 an inventory of all trust assets including dates when investments mature. Rice shall serve as trustee pursuant to this order and opinion until further court order and shall continue to have a duty to safeguard the trust property."

This entry was followed, on December 28, 1982, by an express determination that there was no just reason for delay as to appellant Stark, pursuant to Civ. R. 54(B).

On January 10, 1983 the court ordered Rice's removal as trustee and appointed Central National Bank of Cleveland to replace him. Rice was ordered to turn over all trust assets to the new trustee and to repay to the trust all attorney fees he had paid in his defense of the appellee's lawsuit. The court did not certify that there was no just cause for delay in making this entry.

Rice failed to comply with this order and a show cause hearing was had on April 11, 1983 at which the court found Rice in contempt of its previous orders. Rice was fined $1,000 and $50 per day for each day of continued contempt.

The appellants filed timely appeals from each of these orders, which are dated January 3, 1983, February 9, 1983 and April 13, 1983, citing six additional assignments of error.[4]

I

We will initially consider the assignments of error raised upon appeal of the orders of the general division of the common pleas court entered on December 6, 1982 and January 10, 1983 which relate to the removal of Rice and Stark as trustee and successor trustee, respectively.[5]

It is well established that, in an appeal involving multiple issues or parties, an order which resolves one but not all issues and/or parties, without an express determination by the court that there is no just cause for delay, renders the order non-appealable. See *Whitaker-Merrell* v. *Geupel Co.* (1972), 29 Ohio St. 2d 184 [58 O.O.2d 399].

This rule is designed as a "reasonable accommodation" of a policy to prevent piecemeal appeals. See *Pokorny* v. *Tilby Development Co.* (1977), 52 Ohio St. 2d 183 [6 O.O.3d 416]. *Pokorny* further notes that the rule also provides insurance that parties are aware of the point at which an order or decree has become final for appeal purposes.

Appellants' appeal of the December 6, 1982 order involves a judgment with a proper determination indicating finality for appeal purposes pursuant to the rule.

However, this order of removal relates only to the successor trustee, Ralph Stark. While the decision in making such a determination rests within the sound discretion of the trial court, that decision is always subject to appellate review. See *Curtiss-Wright Corporation* v. *General Electric Co.* (1980), 446 U.S. 1, and *Sears, Roebuck & Co.* v. *Mackey* (1956), 351 U.S. 427, both cases construing the federal counterpart to Ohio Civ. R. 54(B). We adopt this rule.

Generally, whether multiple parties are before the court for purposes of Civ. R. 54(B) is a simple question. However, in the instant case, where the relationship of Rice, as trustee, and Stark, as successor trustee, is to be considered, as well as their alleged *joint* misconduct, any attempt to distinguish the two as multiple parties is impossible. It is apparent that in an appeal taken by either Rice or Stark, identical and interrelated issues would be presented, which for

---

[4] See Appendix A, Assignments of Error I through VI.

[5] Appellants have designated these assignments as I, II, IV, V, and VI.

purposes of judicial economy and finality, should be considered together.

As we have noted, the court's January 10, 1983 order, removing Rice as trustee, which is the subject of appellants' February 9, 1983 appeal, does not contain the express determination qualifying it for appeal pursuant to Civ. R. 54(B), and we are consequently without jurisdiction to entertain it. At oral argument, counsel for appellee contended that the lack of finality in the Rice removal order was an oversight. However, only the trial court can correct such an error. We find that the parties and issues contained in the court's entries of December 6, 1982 and January 10, 1983 are so related and interconnected that judicial economy demands they each be determined in a final decision before this court can assume jurisdiction.

"A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin* v. *United States* (1945), 324 U.S. 229, 233.

Pursuant to Civ. R. 54(B) the appeals taken to the trial court's orders of December 6, 1982 and January 10, 1983 are dismissed, and assignments of error numbered I, II, IV, V and VI will not be considered by this court.

## II

In their third assignment of error the appellants argue that the general division of common pleas court erred in finding Rice in contempt for failure to obey a "non-final" order which transferred assets of the trust from Rice to Central National Bank (order of January 10, 1983). They maintain such a transfer can only be accomplished by means of a final order and that a finding of contempt will only lie from a final order.

This court has recognized in *Manchester* v. *Cleveland Trust Co.* (1953), 95 Ohio App. 201, 216-217 [53 O.O. 152], that:

" 'A court of equity, having jurisdiction over the administration of trusts, will give to the beneficiaries of a trust such remedies as are necessary for the protection of their interests. * * * These remedies include (1) the specific enforcement of the duties of the trustee under the trust; (2) an injunction against a threatened breach of trust; (3) redress for a breach of trust; (4) the appointment of a receiver; (5) the removal of the trustee.'

"'* * *

"When a court of equity has taken jurisdiction over a given controversy, it will retain jurisdiction in order to provide present relief and do complete justice between the parties."

*Manchester* clearly demonstrates that a court is not limited to issuing "final orders" in order to effect jurisdiction and control over a trust estate.

A trustee has a duty to comply with the lawful orders of a court and his willful failure to do so is punishable as contempt. See *Princess Lida* v. *Thompson* (1939), 305 U.S. 456; see, also, 54 Ohio Jurisprudence 2d (1962) 119, Trusts, Section 188. Rice's failure to comply with the court's order was the result of his own intransigence rather than from inability to perform. Accordingly, the court was correct in finding him in contempt and this assignment of error is without merit.

## III

In their seventh assignment of error, appellants contend that the probate court erred in its determination that the real estate commissions paid to Forest Hills Realty Co. were, in fact, "additional attorney fees" requiring a special application to the court or the consent of interested parties. However, it is incumbent upon a fiduciary attempting to collect both an attorney fee and a broker's commission to demonstrate that he was properly acting in a dual capacity and that he, in fact, performed extraor-

dinary services (as a broker) which would justify any additional fees. Without such disclosure the probate court could not make a rational determination of the reasonableness of such fees pursuant to R.C. 2113.36.

The evidence received by the probate referee indicates that no delineation exists between Stark's role as realtor and attorney on behalf of the two estates. This point is illustrated by the testimony of Kathleen Lang, the purchaser of the Miller home:

"Q. Was there any discussion with Mr. Stark regarding any real estate commission?

"A. Never.

"Q. Did you ever ask if there was to be a real estate commission paid?

"A. The only thing I asked Mr. Stark, we were down in the basement of the house and we were looking and I asked him what he got out of this. And he said as a fee as Executor of the Estate.

"Q. Did he ever represent to you that he was a realtor?

"A. Never.

"Q. Is it correct the only statement was that he was attorney for the Executor of the Estate?

"A. Yes.

"Q. Does that contract contain any provision regarding a real estate commission?

"A. I examined it and as far as I could tell, there was no agreement as to any real estate commission at all.

"Q. Is it your understanding that that contract contained the total agreement between you and Mr. Rice?

"A. Yes. That was one of the reasons I was interested in this piece of property, because it was being sold as an estate and I did not have to deal through a real estate company, which I did.

"Q. And did you have any further dealing with Mr. Stark other than that one occasion?

"A. No. Spoke with him on the phone.

"Q. Did he ever indicate to you whether or not any other people had looked at this house prior to you?

"A. No. He said we were the first people as far as I knew or he told me that had looked at the house."

The evidence presented at the probate hearing fails to support the appellants' contention that Stark performed any extraordinary services which would justify an award of broker commissions in addition to the legal fees he also collected.

The Committee of Legal Ethics and Professional Conduct of the Ohio State Bar Association has postulated that: "It would be unethical for him [an attorney] to act both as an attorney and as a real estate broker in one transaction and to charge one fee as an attorney and another fee as a real estate broker." 23 Ohio Bar Association Report (1950) 216.

Because Stark failed to demonstrate that he performed any extraordinary services as a real estate broker, the probate court was correct in considering the broker commissions as attorney fees. In construing the provisions of R.C. 2113.36, which authorize the award of attorney fees, it has been held that:

"Exclusive jurisdiction to fix reasonable fees being in the Probate Court, appeal can only be upon questions of law, no other court having jurisdiction to determine such fees *de novo*. Even when the appeal is on questions of law the Court of Appeals can not modify such judgment on the weight of the evidence and render final judgment for such modified amount; but if the judgment is against the manifest weight of the evidence or contrary to law, it must remand the cause to the Probate Court for further proceedings. See *In re Estate of Murnan,* 151 Ohio St. 529 [39 O.O. 333], paragraph two of the syllabus.

"* * *

"Where a judicial determination is

required to fix the amount of attorney fees to be paid out of the estate, the determining factor is the reasonable value of the services, and this determination cannot be arrived at in a controverted case solely by the application of a predetermined formula of percentages of inventory values. See *In re Estate of Hickok,* 159 Ohio St. 282 [50 O.O. 290] at page 284.

"* * * Reasonable attorney fees must be based upon the actual services performed by the attorneys and upon the reasonable value of those services as determined from the evidence which must substantiate the award of fees as being reasonable. See *In re Estate of Verbeck,* 173 Ohio St. 557 [20 O.O.2d 163].

"Fees which are reasonable must be reasonable both from the standpoint of the attorney rendering the services and from the standpoint of the estate of which payment is being made. The ultimate determination of reasonableness must take into consideration all the factors relating to reasonableness of the fees in the particular case. The facts and circumstances vary so much from case to case that it is impossible to set forth an iron-clad rule other than the one that reasonable value must be substantiated by the evidence in each case.

"Exclusive original jurisdiction to determine reasonable attorney fees being in the Probate Court, the only questions before the Court of Appeals on appeal on questions of law are whether the judgment awarding fees is against the manifest weight of the evidence or contrary to law. If either against the manifest weight of the evidence or contrary to law, final judgment of modification cannot be rendered on reversal, but the cause must be remanded to the Probate Court for further proceedings according to law." *Watters* v. *Love* (1965), 1 Ohio App. 2d 571, 578-579.

This court fails to find the judgment of the probate court denying broker fees to be against the manifest weight of the evidence or contrary to law.

Appellants also challenge Carol Ollick's standing as an "interested party" in the Miller and Detlefs estates for the purpose of filing objections to the payment of the subject fees. It is the appellants' contention that only an heir at law or a party named in the will as a legatee or devisee has the "direct interest" under R.C. 2109.33 or 2109.35 to file such a motion.

R.C. 2109.33 pertains to the general notice requirements upon filing an estate account and the procedure concerning filing exceptions to the account. R.C. 2109.35 governs the manner in which an order settling an account may be vacated. Neither of these sections carries any reference to "direct interest," although R.C. 2109.33 does make reference to "interested party" without providing any statutory definition of that term. Under this section any "interested party" may file an exception to the account. R.C. 2109.35 confers a right to file a motion to vacate a settled account upon "any person affected thereby."

Under the provisions of Beatrice Miller's will her entire probate estate was left to Irma Detlefs. This will was admitted to probate on March 7, 1980. Irma Detlefs, in her will, devised all of her probate estate with the exception of three specific bequests, to the trust. On May 16, 1980 her will was admitted to probate.

In January 1981, the first partial accounts were filed in both estates by appellant Rice. At that point it was clear that the majority of the assets of both estates would ultimately comprise the trust res (see footnote 2). Therefore, appellee, as beneficiary under this trust, had a very "real interest" in the administration of the two estates and was a "party affected thereby."

It has been recognized that beneficiaries under a testamentary trust are

entitled to be heard as exceptors to an account filed in an estate. See *Post* v. *Bowden* (App. 1949), 56 Ohio Law Abs. 240, 248. Under the factual situation presented here, Carol Ollick's interest is almost identical to that of a beneficiary taking under a testamentary trust. We find that the probate court was correct in its conclusion that appellee was a proper party to file exceptions to the accounts rendered and fees paid in each probate estate.

This assignment of error is overruled.

## IV

Appellants' eighth assignment of error concerns the probate court's order directing Stark to return the 1966 Plymouth to the Detlefs estate because an attorney of record in an estate is barred from making purchases from the estate. It is appellants' argument that there is no Revised Code section which prohibits such purchases.

The probate court ruled that R.C. 2109.44, which prohibits self-dealings by an estate fiduciary, is equally applicable to the attorney employed by that fiduciary.

In *Armstrong* v. *Heirs of Huston* (1838), 8 Ohio 552, 553-554, the Ohio Supreme Court, in considering whether an estate appraiser could purchase from the estate, recognized:

"The statute * * * forbidding purchasers [*sic*] by appraisers, relates to sales by execution only. The disability of the appraiser in the present case, if it exists, arises under those general principles of *equity, which prevents those from acquiring a title, to whose discretion or agency the management of a sale is confided.*

"*The application of this doctrine to trustees, executors, attorneys, and agents is familiar in all the books. A majority of the court unite in the opinion, that the principle of exclusion attaches to every person, to whose integrity and* judgment is committed the execution of any step needful in making the sale.

"*Where the law creates fiduciary relations, it seeks to prevent the abuse of confidence, by insuring the disinterestedness of its agents.* It holds the relation of judge and party, of buyer and seller, to be entirely inconsistent. The temptation to abuse power for selfish purposes is so great that nothing less than that incapacity is effectual, and thus a disqualification is wrought by the mere necessity of the case. Fullness of price, absence of fraud, and fairness of purchase are not sufficient to countervail this rule of policy. To give it effect, it is necessary to recognize a right in the former owner, to set the sale aside in all cases on repayment of the money advanced. [*Davoue* v. *Fanning*] 2 Johns. Ch. Cas. 252, and cases cited; 1 Story's Eq. 315, *et seq.*" (Emphasis added.) *Id.* at 554.

For the foregoing reasons the probate court did not err in issuing its order directing return of the automobile.

## V

In their ninth assignment of error appellants argue that the probate court erroneously ordered the return of $500 which Rice had paid his secretary for preparation of the Miller estate tax returns. The appellants contend that Rice, as estate executor, had the right to employ an agent to perform this task.

As with the real estate commissions previously discussed the probate court found that the $500 payment represented additional attorney fees for which the required application for allowance had not been made.

The court heard testimony from appellant Rice that estate planning and estate tax preparation were areas of his expertise and practice. In view of this evidence and the fact that Rice had also received executor fees and paid attorney fees it was within the court's discretion to determine that the subject payment

was an extraneous fee remitted by the executor without application pursuant to R.C. 2113.36.

For the same reasons set forth in Section III, *supra,* as to appellants' seventh assignment of error we will not disturb the trial court's judgment in this area.

## VI

Appellants' claim in their tenth assignment of error, that the referee's calculations of fees in the Miller estate fails to take into account an additional $10,208.34 generated as investment income which results in an additional fee of $204.17 which was not awarded.

As we have recognized, exclusive jurisdiction to fix reasonable attorney fees rests in the probate court. This court can only consider whether the judgment awarding fees is against the manifest weight of the evidence or contrary to law. A review of the July 18, 1983 judgment, which gives rise to this assignment of error, indicates that the court vacated the award of attorney fees in the Miller estate and required that Rice refile "an application for allowance of fees * * * to enable the court to determine the just compensation to be allowed * * *."

The record before this court contains no such reapplication. Until a final determination of attorney fees is entered by the probate court this court is without jurisdiction to consider this assignment and it is accordingly dismissed.

## VII

Appellants' final assignment of error raises the issue of Carol Ollick's standing as an "interested party" in the Beatrice Miller estate for purpose of excepting to or moving to vacate estate accounts. We reject appellants' contentions in this regard and overrule this assignment of error for the reasons previously stated in Section III, *supra,*

dealing with appellants' seventh assignment of error.

The appeals taken from the orders of the general division of the court of common pleas in *Ollick* v. *Rice,* No. 046,048, dated December 6, 1982 (removing Stark as successor trustee) and January 10, 1983 (removing Rice as trustee and appointing Central National Bank as new trustee) are dismissed (App. Nos. 46303 and 46463), and its contempt judgment of April 13, 1983 is affirmed (App. No. 46758).

The appeal taken from the order of probate court in *In re Estate of Miller,* No. 908020, dated July 18, 1983 (vacating attorney fees) is dismissed (App. No. 47339), and the judgments (granting exceptions to the estate accounts and vacating earlier account entries) in *In re Estate of Miller, supra,* and *In re Estate of Detlefs,* No. 909623, are affirmed (App. Nos. 46612 and 46611).

*Appeal dismissed in case Nos. 46303 and 46463.*

*Judgment affirmed in case No. 46758.*

*Appeal dismissed in case No. 47339.*

*Judgment affirmed in case Nos. 46611 and 46612.*

DAY, C.J., and PATTON, J., concur.

## APPENDIX A

### ASSIGNMENTS OF ERROR

#### I

The common pleas court, general division, erred in assuming jurisdiction over matters involving the administration of estates.

#### II

The common pleas court, general division, erred in issuing conclusions of

law, and orders based thereon, directly contrary to the express provisions of a written purported inter vivos trust agreement.

### III

It is error for a trial court to order execution on non-final orders affecting substantial rights and further error to hold defendant-appellant, Rice, in contempt for failure to obey such a non-final order.

### IV

It was error to transfer the assets of the trust to Central National Bank on a non-final order when Ralph Stark, successor trustee under the trust instrument, had posted a supersedeas bond with the court of appeals and his removal had been stayed by the court of appeals.

### V

The court erred to the prejudice of defendant-appellant Rice in finding a breach of trust and it failed to apply O.R.C. Section 1339.51.

### VI

The court of common pleas, general division, erred in depriving the defendant-appellants of a jury trial.

### VII

The probate court's conclusion that the real estate commissions paid to Forest Hills Realty Company, of which appellant Stark received a share, were in fact "additional attorney fees" requiring a special application or consent of interested parties is erroneous as to both law and fact because the commissions were paid for real estate brokerage services, not legal services. Furthermore, appellee is not an interested party because she is neither next-of-kin nor is she named in the wills of either decedent.

### VIII

It was prejudicial error to find that purchase of a 1966 Plymouth from the Detlefs' estate by Ralph Stark, as attorney for the estate, violated O.R.C. Section 2109.44.

### IX

It was prejudicial error to order defendant-appellant, John P. Rice, Jr., refund to the estate of Irma Detlefs the $500.00 paid to an agent for preparation of estate tax returns.

### X

The probate court erred in its calculation of ordinary attorney's fees.

### XI

The probate court erred in finding as a matter of law that plaintiff-appellee is an interested party in the estate of Beatrice Miller.