[Cite as *Butorac v. Osmic*, 2022-Ohio-691.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LINDA M. BUTORAC,                               :

    Plaintiff-Appellee,                    :

                                                         No. 110383

    v.                                     :

HUGH OSMIC,                                     :

    Defendant-Appellant.                   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** March 10, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-881894

---

### *Appearances:*

Schuster & Simmons Co., L.P.A., and Nancy C. Schuster, *for appellee.*

The Saks Law Office, LLC, and Jeffrey Saks; The Law Office of Michael Pasternak, and Michael B. Pasternak, *for appellant.*

---

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Appellant Hugh Osmic ("Hugh") challenges the jury's verdict and the trial court's denial of his motion to dismiss, motion for partial summary judgment, and motion for directed verdict in appellee Linda M. Butorac's ("Linda") suit against

him.  After a careful review of the record and law, we dismiss this appeal for lack of a final, appealable order.

## I. Factual and Procedural History

{¶ 2} Hugh and Linda are siblings and the children of Milan Osmic ("Milan").  Milan owned and operated a company known as Osmic Erectors, Inc.  He purchased four parcels of land on Lakeside Avenue in Cleveland, one of which was the site of Osmic Erectors, Inc.  Upon his retirement in 1999, Milan left the business to Hugh, along with the parcel upon which Osmic Erectors, Inc. was located.  Osmic Erectors, Inc. was renamed Osmic, Inc.

{¶ 3} Milan transferred the remaining three parcels of land to Linda, to wit: Permanent Parcel Numbers 104-02-007 ("007"), 104-02-008 ("008"), 104-02-013 ("013").

{¶ 4} In 2013, Linda planned to sell 007 and 008 (collectively "Properties") to Lakeside Avenue Properties, L.L.C., for the stated price of $600,000.  The sale was set to close on July 26, 2013.

{¶ 5} One day prior to the sale closing, Osmic, Inc. filed suit against Linda in Cuyahoga C.P. No. CV-13-811223 ("2013 suit").  This suit alleged claims for specific performance of oral contract, quiet title, equitable estoppel, unjust enrichment, commercial bad faith, and conversion. Osmic, Inc. also sought a permanent injunction to prevent any sale or transfer of the Properties.  The complaint alleged that Linda was not the rightful owner of the Properties pursuant to an "unwritten agreement" wherein Osmic, Inc. would purchase the Properties with the company's

own funds, and Linda would be the legal title owner of record. This agreement allegedly further provided that Osmic, Inc. would remain the beneficial and equitable owner of the Properties and that at any time, it could demand that Linda transfer the legal title of the property to Osmic, Inc., and that Linda was required to comply. Osmic, Inc. alleged that it had complied with the terms of the unwritten agreement, but Linda had refused to do so, in particular by attempting to sell the Properties to a third party without Osmic Inc.'s knowledge or assent.

{¶ 6} The complaint stated in the first paragraph that "[Osmic, Inc.] is acting by and through its President and sole shareholder, Hugh Osmic." The complaint was later amended to substitute Hugh as the plaintiff, noting that "[a]s a result of said lawsuit, and through the research of documentation during the course of this lawsuit, it was discovered that the proper party Plaintiff is Hugh Osmic * * * ." The amended complaint also changed the property at issue to 013.

{¶ 7} Linda filed a counterclaim in this suit. The court ultimately dismissed the amended complaint and counterclaim without prejudice for want of prosecution.

{¶ 8} In June 2014, Linda filed a complaint for quiet title against Hugh, relating to his interference with the sale of the Properties, in Cuyahoga C.P. No. CV-14-828696 ("2014 suit"). This case was also dismissed without prejudice for failure to name certain lienholders that were listed in the Preliminary Judicial Report.

{¶ 9} The instant matter, the third suit, was filed by Linda against Hugh and sought a judgment declaring that Linda was the sole owner of the Properties. The

complaint further asserted a claim for tortious interference of contract, alleging that Hugh intentionally and without privilege interfered with the pending sale of Linda's real property by claiming an ownership interest in her property and filing a lawsuit to enjoin the sale.

{¶ 10} Hugh moved to dismiss the complaint, arguing that Linda failed to name all necessary parties; that Linda's declaratory judgment claim failed to state a claim because it should have been presented as a quiet title action; that her claims were barred by res judicata and collateral estoppel; and that her tortious interference claim failed to state a claim upon which relief can be granted because the only allegation to support the claim was that Osmic, Inc., had previously filed a quiet title action over the ownership of the Properties. With regard to this last argument, Hugh asserted that he enjoyed absolute immunity from this claim because he was engaging in the judicial process in good faith. He argued that because he was not sanctioned by the court in the 2013 case, his claims had merit and were made in good faith. The court denied the motion to dismiss.

{¶ 11} Hugh then filed an answer and counterclaim and later an amended answer, amended counterclaim, and third-party complaint against Milan.[1] The counterclaim alleged claims for breach of contract, breach of good faith and fair dealing, and quiet title. These claims were based upon a 2001 document regarding the Properties labeled "Land Purchase Agreement" ("LPA") between Milan, Linda,

---

[1] Milan, in turn, filed claims against Osmic, Inc. and Hugh, which were later dismissed without prejudice. Hugh's claims against Milan were dismissed with prejudice at the conclusion of trial.

Hugh, Anna Osmic, who was Linda and Hugh's mother, and the St. Paul Croatian

Federal Credit Union #5049.  The LPA stated as follows:

1.  This agreement recognizes that Linda and Anna Osmic are currently majority stock holders of Osmic Inc.

2.  Osmic Inc. is a shared family business operating and incorporated in Ohio.

3.  Linda Osmic shall be granted as title holder on above mentioned property.

4.  Loan payments and taxes shall be paid as required by law.

5.  Property shall be for the exclusive use of Osmic, Inc.

6.  All payments shall be made at counter located at St. Paul Credit Union.

7.  No transfer of above mention [sic] property shall be done without consent of above listed parties including St. Paul Credit Union.

8.  Death or leave of any member(s) listed above shall divide equally to remaining members.

9.  Any future sales or acquisitions are prohibited until parties have agreed jointly.

10.  Purchased property shall be divided as agreed.

11.  Milan and Anna Osmic (married) 60%

12.  Linda Osmic 20%

13.  Hugh Osmic 20%

14.  Parties listed are prohibited from transferring shared ownership to others not mentioned in agreement.

15.  This document is drafted by recommendations of Kimball Rubin (Kimble [sic] Rubin and Associates).

16. Final transfer to a corporation or partnership shall be done and agreed upon loan satisfaction.

{¶ 12} The agreement contains signatures of Milan Osmic, Anna Osmic, Linda Osmic, Hugh Osmic, and Anthony L. Raguz, Manager of St. Paul Federal Credit Union.

{¶ 13} The counterclaim further sought a judgment declaring that the LPA was valid and binding on the parties; that Hugh had a legal, equitable, and/or beneficial interest in the Properties; and that any previous litigation conducted by Hugh to be in defense of his property rights was justified under the circumstances.

{¶ 14} During pretrial conferences, counsel for Hugh informed the court that Hugh was not claiming an ownership interest in the Properties. The court instructed counsel to prepare an affidavit to that effect for Hugh to sign and later ordered Hugh to do so on two occasions. When Hugh failed to provide the affidavit, Linda filed a motion to show cause. The court granted the motion and made a specific factual finding that Hugh had disclaimed any interest in the Properties.

{¶ 15} Hugh moved for partial summary judgment on the tortious interference claim, using the same reasoning as in the motion to dismiss — that he had absolute privilege to assert his claims in the 2013 suit and that Linda did not seek sanctions against him in the prior suit.

{¶ 16} Linda opposed the motion for partial summary judgment, arguing that Hugh was not justified in interfering with the sale of the Properties nor was his suit "privileged." Linda argued that the LPA was not a valid contract. She presented her

own affidavit where she stated that she did not place her name on the LPA; that she had not ever seen it prior to litigation between Hugh and herself; and that it did not reflect any agreement of which she was aware. Linda further submitted the affidavit of Milan, where he stated that he did not place his name on the LPA and that it did not represent his intentions at that time or any other time.

{¶ 17} The trial court denied Hugh's motion for partial summary judgment as well.

{¶ 18} The case proceeded to a jury trial, held over four days. At the close of evidence, Hugh moved for a directed verdict on the tortious interference claim, which was denied. The jury returned a verdict in favor of Linda for $488,801 plus "legal fees incurred."

{¶ 19} The jury further answered three interrogatories. The first interrogatory asked whether there was a contract between Hugh and Linda with regard to any sale and distribution of proceeds of the Properties, to which the jury answered "no." The second interrogatory asked if Linda had suffered any damages as a result of Hugh's tortious interference with Linda's contract to sell the Properties, and the third asked for the amount of the damages. The jury responded "yes," and "$488,801.00," respectively.

{¶ 20} Hugh moved for judgment notwithstanding the verdict and for a new trial, arguing that (1) the jury improperly awarded attorney fees; (2) the jury was not instructed regarding a clearly erroneous statement made by Linda's counsel regarding dates on the LPA; (3) Linda failed to prove her damages with sufficient

specificity; and (4) Linda was permitted to present expert testimony without submitting a timely expert report.  The trial court denied the motion, holding:

> The grav[amen] of Defendant's motion seeks to impugn the jury's province over inference, which in this case, involved the matters of attorney's fees as part of the total damages, the date of the family plan, and whether or not the total amount of damages was discernible.  It is the jury's role to reasonably conclude a verdict based on inferences from the evidence presented.  *See Lanham v. Excello Specialty Co.*, 8th Dist. Cuyahoga No. 6703[8,] [1995] Ohio App. LEXIS 957 (March 16, 1995).  The record demonstrates sufficient, credible, evidence for the jury's determinations.  As such, Defendant's arguments fail.
>
> With Regard to Defendant's attack on Plaintiff's witnesses, the record shows Plaintiff used those witnesses as fact witnesses since they did not offer opinions.   As such, the testimony was permissible.   *See Zinsmeister v. Leamon*, 8th Dist. Cuyahoga No. 49028, [(1985)] Ohio App. LEXIS 7562 (May 2, 1985).

(Emphasis added.)

{¶ 21} Hugh then filed the instant appeal, raising four assignments of error for our review:

> 1.    There was no legal basis to maintain any claim for tortious interference with contract against Hugh Osmic individually based upon the 2013 Quiet Title Action, which was filed by Osmic, Inc. as plaintiff.
>
> 2.   The Trial Court erred in failing to grant Defendant's motion to dismiss, and subsequent motions for summary judgment and for a directed verdict, on Plaintiff's claim for tortious interference with contract when Plaintiff failed to allege, and there was no evidence of, any action taken by Defendant that was unjustified or otherwise tortious. The only action alleged by Plaintiff is that Defendant previously filed a lawsuit to quiet title, which cannot constitute tortious interference with contract as a matter of Ohio law.
>
> 3.  The jury's verdict on Plaintiff's claim for tortious interference with contract was clearly erroneous because there was no finding by the jury that Defendant acted without justification. The only finding by the jury was that Plaintiff suffered damages.

4. The jury's verdict must be vacated because it is not discernable [sic] from the verdict what amount of damages was for attorneys' fees, and any award of attorneys' fees in this case was legally impermissible because there was no award of punitive damages or any finding of malice, and further because the verdict was against the manifest weight of the evidence.

{¶ 22} Following briefing in this matter, this court sua sponte ordered supplemental briefing on the issue of whether a final, appealable order exists in this case because "legal fees" were awarded by the jury, but there was no corresponding journal entry setting forth the amount of attorney fees awarded. This court further noted that the trial court had denied a motion arguing against the award of attorney fees, but did not memorialize the amount of fees awarded.

{¶ 23} The parties briefed accordingly, and after consideration of the supplemental briefing, this court sua sponte remanded this matter to the trial court for "the sole purpose of the trial court clarifying whether attorney fees are included in the award; the amount of the fees; and whether the amount of the fees awarded was reasonable."

{¶ 24} Following remand, the trial court entered an order determining that attorney fees were not included in the award and consequently, the amount or the reasonableness of such fees was moot. Specifically, the trial court's journal entry stated:

Per the jury's instructions, the jury was only to determine the "damages because of tortious interference by the defendant." The court further elaborated "That's the only kind of damages you can allocate." (Transcript p. 686.) After deliberation the jury filled out its verdict form "$488,801.00 plus legal fees" incurred. Counsel for neither plaintiff nor defendant objected to the award at the time or requested a

hearing and clarification of the attorney fees awarded. Had either party requested the jury and a blank verdict form be sent back to be re-filled, the court would have done so.

The jury was not instructed as to punitive damages and was never specifically instructed as to malice or bad faith. Without a finding of punitive damages, malice, or bad faith, recovery of attorney fees would not be proper. The jury's intention to add legal fees to the award may well be clear on the verdict form, but is not supported by law. Therefore, the inclusion of legal fees is stricken from the damage award and the total damages finding is $488,801.00.

(Emphasis deleted.)

## II. Law and Argument

{¶ 25} At the outset, we must address a question that arose during oral argument as to whether a final, appealable order exists in this case in that there did not appear to be a resolution of Linda's declaratory judgment claim.

{¶ 26} A court of appeals is a court of limited jurisdiction. The Ohio Constitution limits appellate jurisdiction to the review of judgments or final orders. Ohio Constitution, Article IV, Section 3(B)(2); *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 10. A final appealable order, as defined by R.C. 2505.02, includes an order that "affects a substantial right in an action that in effect determines the action and prevents a judgment[.]" R.C. 2505.02(B)(1). "An order determines the action and prevents a judgment when it 'dispose[s] of the merits of the cause or some separate and distinct branch thereof and leave[s] nothing for the determination of the court[.]'" *Crown Servs. v. Miami Valley Paper Tube Co.*, 162 Ohio St.3d 564, 2020-Ohio-4409, 166 N.E.3d 1115, ¶ 17, quoting *VIL Laser Sys., L.L.C. v. Shiloh Industries, Inc.*, 119 Ohio St.3d 354, 2008-

Ohio-3920, 894 N.E.2d 303, ¶ 8. An "appellate court is without jurisdiction to entertain the appeal until all of the intertwined claims are final." *Pesta v. Parma*, 8th Dist. Cuyahoga No. 92363, 2009-Ohio-3060, ¶ 13, citing *Ollick v. Rice*, 16 Ohio App.3d 448, 476 N.E.2d 1062 (8th Dist.1984).

{¶ 27} One of Linda's claims in this matter sought a judgment declaring that she was the rightful owner of the Properties and that Hugh had no interest in the Properties. As noted above, in an order granting a motion to show cause filed by Linda, the trial court made a specific factual determination that Hugh had disclaimed any interest in the Properties. This did not resolve Linda's declaratory judgment claim, though; at trial, prior to the jury charge, Linda's counsel moved for a directed verdict on Count 1 of her complaint, which was the declaratory judgment claim. The court denied the motion, responding, "We'll find those answers out very soon from the jury."

{¶ 28} The jury determined that (1) there was not a contract between Hugh and Linda with regard to any sale and distribution of proceeds of the Properties, (2) that Linda incurred damages as a result of Hugh's tortious interference, and (3) the amount of such damages. The jury returned a general verdict in favor of Linda and awarded damages. While the answers to the jury interrogatories appear to indicate that the jury believed Linda to be the rightful owner of the Properties, there is no judgment declaring the same or addressing Hugh's lack of interest or claim to the Properties. Thus, Linda's declaratory judgment claim remains outstanding, and a

final appealable order does not exist in this matter, thereby depriving us of jurisdiction over this appeal.

## III. Conclusion

{¶ 29} Because Linda's declaratory judgment claim was not resolved in the trial court, a final appealable order does not exist in this matter. We therefore lack jurisdiction over the appeal.

{¶ 30} Accordingly, the appeal is dismissed.

It is ordered that appellee recover of appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LISA B. FORBES, J., and
MARY J. BOYLE, J., CONCUR