[Cite as *Butorac v. Osmic*, 2024-Ohio-3019.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| LINDA M. BUTORAC, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 113585 |
| HUGH OSMIC, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 8, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-881894

---

### *Appearances:*

Schuster & Simmons Co., L.P.A., and Nancy C. Schuster,
*for appellee.*

Hugh Osmic, *pro se.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Hugh Osmic ("Osmic") appeals the trial court's judgment denying his motion to vacate void judgment based on the lack of a final, appealable order. Appellee Linda Butorac ("Butorac") asserts that this appeal is frivolous and

has already been adjudicated. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} This court has previously summarized the relevant factual and procedural history of this case in Osmic's direct appeal of the final judgment, as follows:

> In 1990, Milan Osmic ("Milan") retired from Ford Motor Company and started his own business, Osmic Erectors, Inc. ("Osmic Erectors"). He intended it to be family operated, with his wife Anna Osmic ("Anna"), and children Hugh and Linda[] all taking part in the business. Milan retired from Osmic Erectors in 1999. Around that time, Linda graduated from college with a degree in finance and a minor in economics. On graduating, Milan gave Linda three parcels of land, parcels 104-02-007 ("parcel 007"); 104-02-008 ("parcel 008"); 104-02-013 ("parcel 013"). These transfers were memorialized in deeds and recorded with the Cuyahoga County Recorder's Office; parcel 013 filed in 1999, and the joint deed for parcels 007 and 008 filed in 2000. Later, Milan gave Hugh a separate parcel where the Osmic Erectors' building was located, parcel 104-02-006. The company changed its name from Osmic Erectors to Osmic Inc.
>
> Linda functioned as the president of the company from 1999 to 2011. Her mother, Anna, functioned as vice president until shortly before her death in 2010. Linda held a 40 percent interest in the company, while Anna held a 60 percent interest. When Anna died, her shares were transferred to Milan. After Anna's death, Linda and Hugh's relationship deteriorated. Hugh had a "big" personality and often yelled and swore at Linda while working. Linda left her position as president in 2011. In 2012 after Hugh kicked her out of the company building, Linda left the company altogether and transferred her shares to Milan. Linda decided to pursue a nursing degree, a field she became interested in while caring for her mother prior to her death.
>
> On April 8, 2013, Linda executed a real estate purchase and sale agreement selling parcels 007 and 008 to Lakeside Avenue Properties LLC ("Lakeside") for $600,000. Lakeside owned a neighboring

property and hoped to use the parcels to expand its business. A closing date was set for July 26, 2013.

On July 25, 2013, Osmic Inc. filed a lawsuit requesting injunctive relief to prevent the sale of the properties. At that time, Hugh was the sole owner of Osmic Inc. The company's complaint alleged that there was an oral agreement between the family members regarding the parcels gifted to Linda by Milan — 007, 008, and 013. Per the complaint, this agreement placed Linda as the equitable holder of parcels 007, 008, and 013, for the benefit of Osmic Inc.

Prior to finalizing the closing, Lakeside became aware of the lawsuit and agreed to extend the closing date to September 2013 to allow Linda to resolve the matter. However, Linda was unable resolve the lawsuit by the September closing date. Consequently, Lakeside withdrew its offer to purchase the properties and pursued other nearby properties.

On January 8, 2014, Osmic Inc.'s original complaint was amended. Hugh was substituted as the plaintiff and the complaint was amended to claim an interest in parcel 013 based on an oral contract. On May 8, 2014, Osmic Inc. filed a motion to continue trial and leave to plead. Attached to that motion was a purported written agreement (the "family plan") dated May 3, 2001, allegedly signed by Hugh, Linda, Anna, and Milan. The document was on letterhead from the St. Paul Croatian Federal Credit Union #5049 ("St. Paul Credit Union") and titled "Land Purchase Agreement." Despite the fact that Linda had been deeded parcels 007 and 008 the year before the document was created, the document indicated that Linda "shall be granted as title holder" of the properties. Additionally, the document provided that the properties could not be sold without the agreement of all signatories as well as St. Paul Credit Union. If the parties agreed to sell the properties, the proceeds would be divided among the family members with Anna and Milan receiving 60 percent and Hugh and Linda receiving 20 percent each.

On July 4, 2014, the case was dismissed without prejudice and without resolution.

In the meantime, on June 20, 2014, Linda filed a complaint against Osmic Inc. and Hugh for quiet title, negligent interference with contract, intentional interference with contract, conversion/unjust

enrichment, and action on a debt. The case was dismissed without prejudice on November 24, 2014, for failure to join necessary parties.

Linda filed the current action on June 16, 2017. In it, she sued Hugh and requested a declaratory judgment determining that she was the sole and only owner of parcels 007, 008, and 013. She also alleged that Hugh had no legal, equitable, or beneficial present or future interest in the parcels. Furthermore, she claimed Hugh committed tortious interference with contract by filing the 2013 lawsuit that prevented her from completing her contract with Lakeside.

Hugh filed a motion to dismiss the complaint on August 10, 2017. In it, among other things, Hugh argued that Linda's complaint failed to state a claim upon which relief could be granted. Specifically, with respect to the tortious interference claim, Hugh argued that he enjoyed absolute immunity to file the 2013 lawsuit because he acted in good faith to protect his interests in parcels 007 and 008. The trial court denied the motion on October 30, 2017.

Hugh filed his answer on November 13, 2017. He abandoned the original argument he made in the 2013 lawsuit that there was an oral agreement among the family members. Hugh claimed that there was a written agreement created in 2001, the family plan, that gave him a 20 percent interest in parcels 007 and 008, and that he was justified in filing his 2013 lawsuit to protect his interest in the properties. Hugh filed a counterclaim that alleged breach of contract, i.e., that Linda breached the family plan; breach of good faith and fair dealing; quiet title asking the court to recognize his equitable interest in the properties; and declaratory judgment establishing (a) Hugh's interests in the property, (b) declaring the family plan a valid contract binding on its parties, and (c) declaring that the 2013 lawsuit was in defense of his property rights and justified under the circumstances.

On June 21, 2018, Hugh filed an amended answer and counterclaim and added Milan as a third-party defendant. Hugh's responses to Linda's complaint remained largely the same. In his complaint against Milan, Hugh alleged that his father was guilty of breach of contract for violating the family plan.

On May 31, 2019, Hugh filed a motion for partial summary judgment on the tortious interference claim. He argued that any false statements made during the 2013 litigation were not actionable. Hugh maintained that any statements he made in the prior litigation were

protected and rendered him immune from a subsequent lawsuit. The trial court denied the motion on July 15, 2019.

After further motion practice, a jury trial commenced on January 20, 2020. At the conclusion of testimony, Hugh moved for a directed verdict as to damages. He alleged that the evidence presented was merely speculative, and Linda had not shown damages with specificity. The trial court denied the motion. Hugh also moved for a directed verdict of the tortious interference claim. He again alleged that he was within his rights to file the 2013 lawsuit. The trial court similarly denied that motion. Finally, Hugh dismissed his claim against Milan.

The case was submitted to the jury with a general verdict form and three interrogatories as follows:

> Interrogatory 1: By a preponderance of the evidence, was there a contract between Linda Butorac, Hugh Osmic, and Milan Osmic regarding any sale and distribution of proceeds of parcels 007 and 008, which are titled to Linda Butorac?

> Interrogatory 2: If you respond "No" to interrogatory No. 1, do you find by a preponderance of the evidence that Linda proved that she suffered damages as a result of Hugh's tortious interference with Linda's contract to sell parcels 007 and 008, which are titled to Linda Butorac?

> Interrogatory 3: If you answered Interrogatory No. 2 "Yes," state the amount of Linda Butorac's damages.

The jury unanimously voted in favor of Linda. They found that there was no contract between Linda, Hugh, and Milan regarding any sale and distribution of proceeds of parcels 007 and 008 and that Linda proved that she suffered damages because of Hugh's tortious interference with Linda's contract with Lakeside. The jury awarded damages in the amount of: "$488,801 and legal fees incurred as a result of this lawsuit."

On February 21, 2020, Hugh filed a motion for judgment notwithstanding the verdict and for a new trial. Then on March 26, 2021, Hugh filed a notice of appeal. On October 5, 2021, this court remanded the case back to the trial court to clarify whether attorney

fees were included in the award, and if so, the amount of the fees and whether the amount awarded was reasonable. On November 5, 2021, the trial court issued a journal entry declaring that attorney fees were not a part of the jury's award. The court noted that the jury was instructed only to determine the damages caused by Hugh's interference with Linda's contract. The trial court returned the case to the court of appeals. On March 10, 2022, this court dismissed the appeal finding no jurisdiction because Linda's declaratory judgment claim was not resolved and thus there was no final appealable order [*Butorac v. Osmic*, 2022-Ohio-691 (8th Dist.)].

On July 20, 2022, the trial court entered its ruling on Linda's declaratory judgment claim. The court found that Linda was the sole and only owner of parcels 007, 008, and 013, and that Hugh had no legal or equitable interest in the properties. The trial court reiterated the jury's verdict and its ruling on damages as well.

On August 8, 2022, the trial court denied Hugh's motion for judgment notwithstanding the verdict and motion for new trial.

*Butorac v. Osmic*, 2023-Ohio-1812, ¶ 2-20 (8th Dist.) ("Osmic's direct appeal").

{¶ 3} This court overruled all of the assigned errors enumerated in Osmic's direct appeal and affirmed. *Id.* at ¶ 68.

{¶ 4} This court released its opinion in Osmic's direct appeal on June 1, 2023. On June 12, 2023, Osmic filed a motion for reconsideration alleging several "errors" in this court's opinion. Pertinent to this appeal, none of the alleged errors were based on a failure to adjudicate Osmic's counterclaim.

{¶ 5} Additionally, Osmic returned to the trial court and, on June 16, 2023, filed a motion for relief from judgment pursuant to Civ.R. 60(B), reiterating most of the same points in his motion for reconsideration, and, again, none pertained to the trial court's alleged failure to adjudicate Osmic's counterclaim.

{¶ 6} In response to both the motion for reconsideration and the motion for relief from judgment, Butorac filed briefs in opposition.

{¶ 7} On July 6, 2023, Osmic, in this court, filed a "reply brief" and an additional motion titled: "motion to quash appeal for lack of jurisdiction." This motion asked this court to quash Osmic's direct appeal, alleging that this court did not have jurisdiction to consider it. The motion raised, for the first time, that his counterclaim had not been disposed of and remained outstanding. Therefore, Osmic asked that this court "quash" the entirety of Osmic's direct appeal because this court lacked jurisdiction to consider it.

{¶ 8} On July 20, 2023, this court denied Osmic's motion for reconsideration and denied Osmic's motion to quash the appeal for lack of jurisdiction. In denying the motion to quash, this court reasoned that "[a]ny counterclaim in the underlying case was resolved by the jury's verdict, accordingly, this court had jurisdiction to hear the appeal."

{¶ 9} Despite this court's rulings on Osmic's motions for reconsideration and motion to quash the appeal for lack of jurisdiction, Osmic returned to the trial court. On August 1, 2023, Osmic filed a supplement to his Civ.R. 60(B) motion in the trial court, alleging that the failure to dispose of his counterclaim rendered the trial court's judgment void.

{¶ 10} On August 28, 2023, the trial court denied Osmic's Civ.R. 60(B) motion for relief from judgment without a hearing, reasoning that

Hugh is attempting to use a procedural mechanism to set aside a final judgment that has been upheld on direct appeal to the court of appeals. Typically, a trial court lacks jurisdiction to disturb a final judgment after an appeal. *See State ex rel. Special Prosecutors v. Judges of the Court of Common Pleas*, [55 Ohio St.2d 94, 97 (1978)]. The judgment of the reviewing court is controlling upon the lower court as to all matters within the compass of the judgment. *Id.*

There exist, therefore, limited instances in which a motion under Civ.R. 60(B) could be held by the trial court following an appeal. Specifically, newly discovered evidence relevant to the case or newly discovered evidence to support fraud, misrepresentation, or misconduct of an opposing party. Civ.R. 60(B). Either of these avenues for relief requires a party to bring forth new facts. A Civ.R. 60(B) motion for relief from judgment cannot be used as a substitute for a timely appeal or as a means to extend the time for perfecting an appeal from the original judgment. *State ex rel. Durkin v. Ungaro* [39 Ohio St.3d 191, 192 (1988)].

Hugh's basis for his Civ.R. 60(B) motion rehash the same argument from the trial and the appeal in this matter. Hugh failed to attach any new evidence that was not considered by the factfinder or appellate court from the original. Because Hugh has not demonstrated that, were his motion granted, he has a meritorious defense or that he would be entitled to relief under the grounds of Civ.R. 60, the court declines to hold a hearing on the matter. *Crown Property Consultants, Inc. v. USI Storage, LLC*, [2007-Ohio-4736, ¶ 9 (12th Dist.)].

{¶ 11} On September 28, 2023, Osmic appealed from the trial court's denial of his Civ.R. 60(B) motion for relief from judgment. This court sua sponte dismissed the appeal for failure to timely file a notice of appeal pursuant to App.R. 4(A). Shortly thereafter, Osmic filed a motion for reconsideration, asking the court to enlarge the time for filing a notice of an appeal, that this court denied.

{¶ 12} On December 28, 2023, Osmic returned to the trial court and filed a motion to vacate void judgment, arguing, yet again, that the final judgment in this case was void because it did not dispose of his counterclaim.

{¶ 13} On January 5, 2024, the trial court denied Osmic's motion to vacate void judgment. It is from this judgment that Osmic now appeals, asserting two assigned errors for our review:

> 1. The lower court erred in denying Appellant's motion to vacate void judgment and by closing the case despite the fact that Appellant's counterclaim was never adjudicated.
>
> 2. This Court committed fundamental error in issuing the June 1, 2023 opinion in this case, as it did not have jurisdiction because the trial court's judgment was not final due to the Appellant's counterclaim never having been adjudicated.

## II. Law and Analysis

{¶ 14} In this court's July 20, 2023 judgment entry denying Osmic's motion to quash, this court stated that Osmic's counterclaims had been resolved by the jury's verdict. This appeal resolves itself in several ways and gives credence to the idiom that "there is more than one way to skin a cat."

{¶ 15} First, the law-of-the-case doctrine provides that "legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels." *Giancola v. Azem*, 2018-Ohio-1694, ¶ 1, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). This court unequivocally determined that Osmic's counterclaims were resolved by the jury's verdict.

{¶ 16} Second, res judicata "bars a party from relitigating the same issue or claim that has already been decided in a final, appealable order or a valid, final judgment in a prior proceeding and could have been raised on appeal in that prior

proceeding." *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 15, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990); *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus; *McAdams v. Mercedes-Benz USA, L.L.C.*, 2020-Ohio-3702, ¶ 21.

{¶ 17} An exception to the res judicata doctrine will not apply "when the parties had a full and fair opportunity to be heard on an issue; the trial court issued a final, appealable order determining that issue; the parties failed to pursue a direct appeal or other available remedies to challenge that court's order; and the parties did not commit bad-faith acts during the course of that litigation." *AJZ's Hauling* at ¶ 19, citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 195 (1983).

{¶ 18} Osmic had the opportunity to contest the validity and finality of the trial court's judgment in Osmic's direct appeal; he did not and in fact, brought the direct appeal himself, indicating that he believed that the order was final and appealable. Moreover, this court *and* the trial court have already addressed Osmic's claims that Osmic's direct appeal did not emanate from a final, appealable order through Osmic's numerous postjudgment motions and motions for reconsideration, as outlined above.

{¶ 19} As a final point, we reiterate that the jury's verdict did determine Osmic's counterclaim and this court's determination in the July 20, 2023 entry is correct. The gist of Osmic's counterclaim alleged that there was a written contract that he referred to as "the family plan" that gave him a 20 percent interest in the at-

issue parcels of real estate. His counterclaims for breach of contract, breach of good faith and fair dealing, quiet title, and declaratory judgment are all premised on the jury finding that the family plan *existed*. The jury, in its answer to Interrogatory No. 1, found that no contract, including the alleged "family plan," existed between the parties. Therefore, it is indisputable that Osmic's counterclaim was adjudicated by the jury's verdict.

{¶ 20} Based on the foregoing, we overrule Osmic's first assignment of error.

{¶ 21} Regarding Osmic's second assignment of error, it appears that Osmic is asking us to review our own opinion that we released in Osmic's direct appeal. Again, this is barred by res judicata because we already considered our own appeal pursuant to Osmic's motion for reconsideration. Moreover, the proper vehicle for instituting a jurisdictional appeal of a judgment from this court is to file an appeal to the Ohio Supreme Court.

{¶ 22} Osmic's second assignment of error is therefore overruled.

### III. Conclusion

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK DANIEL CELEBREZZE, III, JUDGE

MICHELLE J. SHEEHAN, P.J., and
ANITA LASTER MAYS, J., CONCUR